**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/22/2024

WELLS FARGO BANK, NATIONAL ASSOCIATION,
as Trustee for the benefit of the registered holders of
JPMBB Commercial Mortgage Securities Trust 2015-
C27, Commercial Mortgage Pass-Through Certificates,
Series 2015-C27, acting by and through its special
servicer, LNR Partners, LLC,

                Plaintiff,

    v.

15 WEST 55TH ST. PROPERTY LLC; SALIM ASSA;
STEVEN FINKELSTEIN; MARILYN FINKELSTEIN;
NEW YORK CITY DEPARTMENT OF FINANCE;
NEW YORK CITY ENVIRONMENTAL CONTROL
BOARD; NEW YORK CITY CRIMINAL COURT;
and JOHN DOES # 1 – 50, said John Doe defendants
being fictitious and unknown to Plaintiff, it being
intended to name all other parties who may have some
interest in or lien upon the premises sought to be
foreclosed,

                Defendants.

Case No.: 1:23-cv-00524 (JHR)

### STIPULATION CONSENTING TO
### FINAL JUDGMENT OF FORECLOSURE AND SALE

Plaintiff Wells Fargo Bank, National Association, as trustee for the registered holders of

JPMBB Commercial Mortgage Securities Trust, Commercial Mortgage Pass-Through

Certificates, Series 2015-C27 ("Plaintiff"), acting by and through its special servicer, LNR

Partners, LLC, and 15 West 55th St. Property LLC ("Borrower") (Plaintiff and Borrower are

collectively referred to herein as the "Parties"), by and through their respective counsel of record,

hereby stipulate and agree, and upon being So-Ordered by the Court, it hereby is adjudged and

ordered, as follows:

## RECITALS

### A.  The Property and Loan

A.      By Loan Agreement dated as of January 13, 2015[1] (the "Loan Agreement"), Barclays Bank PLC, a public company registered in England and Wales ("Original Lender"), agreed to make a loan to Borrower in the amount of $73,000,000.00 (the "Loan"). Capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the Loan Agreement. The Loan Agreement was filed to the docket in this action under ECF No. 1-4.

B.      The Loan is evidenced by, inter alia, an Amended, Restated and Consolidated Promissory Note, dated January 13, 2015, in the original principal amount of $73,000,000.00, executed and delivered by Borrower in favor of Original Lender (the "Note"). Pursuant to the Note, Borrower, inter alia, agreed to pay Original Lender, its successors or assigns, the sum of $73,000,000.00 plus interest thereon at the rates set forth therein. The Note was filed to the docket in this action under ECF No. 1-1.

C.      As collateral security for the payment of the Note, Borrower, inter alia, executed, acknowledged, and delivered to Original Lender an Amended, Restated and Consolidated Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated as of January 13, 2015 (the "Mortgage"). The Mortgage consolidated certain pre-existing mortgages to create a single first-priority mortgage lien and security interest in and to certain real and personal property owned by Borrower in the Borough of Manhattan, and within the City, County, and State of New York, located at 15 West 55th Street, New York, New York 10019, and designated as

---

[1]  Due to a scrivener's error at origination of the Loan, the Loan Agreement is dated as of January 13, 2014, rather than the correct date of January 13, 2015. Such scrivener's error does not render the Loan Agreement, or any other Loan Document (as defined herein), unenforceable either in whole or in part and Borrower has no defenses, claims or counterclaims to the enforceability of its obligations thereunder based on such scrivener's error.

58662880

Block 1271, Lot 27 on the Tax Map for the County of New York (as more particularly described in the Mortgage, the "Property") in favor of Original Lender, its successors or assigns, to secure Borrower's obligations under the Loan, including its obligations under the Note and Mortgage. The Mortgage was duly recorded against the Property in the Office of the City Register of the City of New York (the "City Register's Office") on January 20, 2015 as City Register File Number ("CRFN") 2015000022559 and the mortgage recording tax was duly paid. The Mortgage was filed to the docket in this action under ECF No. 1-2.

       D.      As further security for the payment of the Note, Borrower, inter alia, executed, acknowledged, and delivered to Original Lender an Assignment of Leases and Rents dated as of January 13, 2015 (the "ALR"), pursuant to which Borrower, inter alia, assigned to Original Lender, its successors or assigns, all of Borrower's right, title, and interest in and to the Leases and Rents (as those terms are defined therein). The ALR was duly recorded on January 20, 2015 in the City Register's Office as CRFN 2015000022560. The ALR was filed to the docket in this action under ECF No. 1-3.

       E.      In order to induce Original Lender to make the Loan to Borrower, defendants Steven Finkelstein, Mary Finkelstein and Salim Assa (collectively, the "Guarantors") executed in favor of Original Lender, its successors or assigns, a certain Guaranty of Recourse Obligations of Borrower dated as of January 13, 2015 (the "Recourse Guaranty"). The Recourse Guaranty was filed to the docket in this action under ECF No. 1-5.

       F.      By (1) Assignment of Mortgage dated as of February 25, 2015, and duly recorded in the City Register's Office on March 26, 2015 as CRFN 2015000103411, (2) Assignment of ALR dated as of February 25, 2015, and duly recorded in the City Register's Office on March 26, 2015 as CRFN 2015000103412, and (3) allonge firmly affixed to the Note, Original Lender

transferred and assigned all of its right, title and interest in and to the Note, Mortgage and ALR to Plaintiff. The Assignment of Mortgage, Assignment of ALR, and the allonge affixed to the Note were filed to the docket in this action under ECF Nos. 1-6, 1-7, 1-1 (at p. 9), respectively.

G.    Plaintiff is the current holder of the Note, Mortgage, ALR, Recourse Guaranty and other documents and agreements executed by Borrower in connection with the Loan (collectively, together with all amendments or modifications thereto, the "Loan Documents") and all rights relating thereto.

**B.    The Initial Default and Modification**

H.    Borrower defaulted on its obligations under the Loan Documents by, inter alia, (i) following Domenico Vacca's default on its obligations under the Domenico Vacca Lease,[2] failing to pay the full $2,000,000.00 amount of the Domenico Vacca Letter(s) of Credit and pay all such sums to Plaintiff for deposit in the Rollover Reserve Account in accordance with the requirements of Section 5.1.17(f) of the Loan Agreement; (ii) failing to maintain the full $2,000,000.00 face amount of the Domenico Vacca Letter(s) of Credit in accordance with the requirements of Section 5.1.17(f) of the Loan Agreement; (iii) terminating the Domenica Vacca Lease, which is a Major Lease, without Lender's prior written consent in violation of Section 5.1.17(b) of the Loan Agreement (the "Lease Termination Event of Default"); (iv) failing to pay the Monthly Debt Service Payment Amount due under the Loan Documents on each of the Payment Dates commencing on March 6, 2020 and continuing to January 6, 2021; and (v) failing to fund the Monthly Tax Deposit resulting in Plaintiff funding $113,699.57 to pay for Taxes on or before the date when Taxes became delinquent (collectively, the "Initial Default").

---

[2]    Capitalized terms not defined herein are defined in Plaintiff's Complaint filed under ECF No. 1 (the "Complaint").

I.      Pursuant to Section 9.4(b)(xiii) of the Loan Agreement, Borrower and the Guarantors are personally liable to Lender for the Losses that Lender incurs arising out of or in connection with the Lease Termination Event of Default ("Major Lease Recourse Claim").

J.      To resolve the Initial Default and the Major Lease Recourse Claim, Lender, Borrower and the Guarantors executed certain documents dated January 11, 2021, and effective as of March 6, 2020 (the "Effective Date"), that modified the Loan Documents, including, among other documents, a Loan Modification Agreement executed by Plaintiff and Borrower (the "Modification Agreement").  The Modification Agreement provides, among other things, that upon the occurrence of an Event of Default under the Loan Documents (including, without limitation, the Modification Agreement) after the Effective Date: (1) Borrower shall execute and deliver to Lender an affidavit consenting to final judgment of foreclosure and sale (as defined in the Modification Agreement, the "Foreclosure Judgement Affidavit"), (2) Lender is entitled to file the Foreclosure Judgement Affidavit with the Court, (3) Borrower shall execute and deliver to Lender, and shall consent to the filing of, a joint or agreed stipulation providing for the immediate entry of a final and non-appealable judgment of foreclosure and sale with respect to the Property and specifying the total amount due from Borrower under the Loan Documents, and (4) Borrower shall fully cooperate with Lender's right to obtain entry of and the relief specified in the judgment of foreclosure and sale.

C.      **The Instant Foreclosure Action**

K.      On January 20, 2023, Plaintiff commenced the above-captioned action by filing the Complaint with exhibits 1-18 thereto under ECF No. 1, a Civil Cover Sheet under ECF No. 2, and a Rule 7.1 Statement under ECF No. 3.  The Complaint asserts five (5) causes of action, including

58662880

the First Cause of Action against Borrower for foreclosure of the Mortgage based on the occurrence of one or more Event(s) of Default after the Effective Date.

**D.      Acknowledgements and Consents of Borrower**

L.      As required by the Modification Agreement, Borrower, through its authorized representative and signatory, executed and delivered to Plaintiff the Foreclosure Judgment Affidavit, dated as of September 23, 2022, pursuant to which Borrower, inter alia, agreed and acknowledged that: (i) Plaintiff is the current holder and owner of the Loan and the Loan Documents, including the Note and Mortgage; (ii) Borrower committed one or more Events of Default under the Loan Documents after the Effective Date, including without limitation, failing to pay the Monthly Debt Service Payment Amount due on the August 6, 2021 Payment Date and on each Payment Date thereafter (the "Payment Defaults"); and (iii) Borrower consents to all of the relief sought against Borrower in the Complaint, and to the entry of a final judgment of foreclosure and sale.  The Foreclosure Judgment Affidavit was filed to the docket in this action under ECF No. 1-12, and is being re-submitted and attached hereto as **Exhibit 2**.

M.      The material allegations of the Complaint supporting Plaintiff's entitlement to judgment of foreclosure and sale are deemed admitted by Borrower.

N.      Borrower hereby reaffirms that it consents to all of the relief sought against Borrower in the Complaint, and hereby reaffirms that its representations, acknowledgements, agreements, and other statements in the Foreclosure Judgment Affidavit are true and accurate and continue to be binding on Borrower, subject to updating the Outstanding Indebtedness (defined below).

58662880

O.      Borrower hereby consents and agrees to the immediate entry of a final and non-appealable judgment of foreclosure and sale in the proposed form attached hereto as **Exhibit 1** (the "Foreclosure Judgment").

E.      **The Proceedings Before the Court**

P.      On January 24, 2023, the Clerk of the Court issued a Summons with respect to each of the named defendants (ECF Nos. 13-19).

Q.      Between January 31, 2023 and February 7, 2023, the Complaint with exhibits 1-18 thereto and the respective Summons were duly served on each of the defendants in accordance with the Federal Rules of Civil Procedure, and the related Affidavits of Service were filed to the docket in this action under ECF Nos. 21-28.

R.      On March 9, 2023, Plaintiff filed a Notice of Pendency in the New York County Clerk's Office against each of the named defendants in this action and the real property known as 15 West 55th Street, New York, New York 10019 and situated in the Borough of Manhattan, Block 1271, Lot 27, on the land and tax map of the County, City, and State of New York.  A true and correct copy of the as-filed Notice of Pendency is attached hereto as **Exhibit 3**.

S.      The Summons, Complaint, and Notice of Pendency were in the form prescribed by the applicable Federal Rules of Civil Procedure and New York Consolidated Laws, Civil Practice Law and Rules, and contain all the particulars required by law to be stated in such documents.

T.      Pursuant to a Notice of Appearance and Waiver in Foreclosure dated February 6, 2023, and filed to the docket in this action under ECF No. 20, defendants New York City Department of Finance ("DOF") and New York City Environmental Control Board ("ECB") waived service of all papers in the action except "amended complaint, notice of discontinuance of action, notice of sale, Referee's report of sale, and notice of proceedings to obtain surplus moneys."

U.     The proceedings in this action have been regular and in accordance with the rules and practice of this Court, all defendants have been provided the statutorily required amount of time to file an answer to the Complaint and appear and defend their interests, and defendants DOF, ECB, and New York City Criminal Court have defaulted in this action by failing to answer the Complaint.  Upon information and belief, no defendant in this action is an infant, incompetent, or an absentee.

F.     **The Outstanding Indebtedness**

V.     As of May 1, 2023, the total amount due under the Loan Documents is $88,260,179.77 (the "Outstanding Indebtedness"):

58662880

| Unpaid Principal Balance | $73,000,000.00 |
|---|---|
| Interest at Pay Rate (3.00%) from November 6, 2021 to May 1, 2023 (Per diem $6,083.33): | $3,291,083.29 |
| Interest at Default Rate (5.00%) from November 1, 2021 to May 1, 2023 (Per diem $13,368.77): | $6,586,447.07 |
| Late Fees from August 6, 2021 to November 6, 2021 | $37,412.51 |
| Prepayment Premium | $730,000.00 |
| Deferred Interest | $3,123,791.52 |
| Advances | $780,701.57 |
| Bank Account Maintenance Fees | $8,800.00 |
| Payoff Processing Fee | $5,500.00 |
| Cash Management Administrative Fee | $7,700.00 |
| Interest on Advances | $106,721.38 |
| Special Servicing Fee | $572,714.94 |
| Workout Fee | $9,307.49 |
| **TOTAL** | **$88,260,179.77** |

Less certain amounts (as of May 1, 2023):

| Credit Suspense, Reserve, and Escrow Funds | ($1,044,074.74) |
|---|---|
| Lockbox Funds | ($612,829.29) |
| **Total Amount Due** | **$86,603,275.74** |

In addition to the foregoing, Borrower acknowledges and agrees that it is indebted to Plaintiff for additional fees and costs, including without limitation any property protection advances and attorneys' fees and costs incurred by Plaintiff after May 1, 2023, which amounts shall be added to the Outstanding Indebtedness. Borrower also acknowledges and agrees that the amount of any reduction for amounts held by Plaintiff as credit suspense, reserve, and escrow funds, or deposited in the Lockbox Account shall be updated and revised based on the actual amounts available in

such accounts as of the date of transfer of title of the Property pursuant to a foreclosure sale, as further specified below.

## STIPULATION AND ORDER

1.       The Recitals set forth above are hereby incorporated by reference in this Stipulation and Order as though fully set forth herein, and are agreed and consented to in full by the Parties

2.       This Court has jurisdiction of the Parties and the subject matter of this action.

3.       None of the defendants herein are infants, incompetents, or absentees.

4.       The Parties are not aware of any third parties not named as defendants herein that hold any interest in the Property subordinate to Borrower's interest and which would be affected by this action, and the caption shall be amended to strike the fictitious defendants referred to as "John Does #1-50."

5.       As of May 1, 2023, the amount of $88,260,179.77 is due and owing by Borrower to Plaintiff under the Loan Documents, which includes the following sums (less amounts deposited in the Lockbox Account and/or amounts held by Plaintiff in reserve, escrow, or suspense accounts, which, as of May 1, 2023, totaled $1,656,904.03):

      a.   the outstanding principal balance of $73,000,000.00 (the "Principal Balance");

      b.   accrued and unpaid interest on the Principal Balance at the contractual non-default Pay Rate of 3.00% per annum (the "Pay Rat-e") from November 6, 2021 to May 1, 2023, in the amount of $3,291,083.29;

      c.   accrued and unpaid default interest on the Principal Balance at the additional default rate of 5.00% per annum (the "Default Rate") from November 1, 2021 to May 1, 2023, in the amount of $6,586,447.07;

    d.   late fees due under the Loan Documents in the amount of $37,412.51;

    e.   prepayment premium in the amount of $730,000.00;

    f.   deferred interest in the amount of $3,123,791.52; and

    g.   accrued and unpaid fees, expenses (including without limitation attorneys' fees and expenses), protective advances, and other charges recoverable under the Loan Documents that were incurred by Plaintiff or its servicers on its behalf, on or before May 1, 2023, in the aggregate amount of $1,491,445.38.

6.      Plaintiff is entitled to the immediate entry of a judgment of foreclosure and sale in its favor and against Borrower in the amount of $88,260,179.77 as and for principal, interest, default interest, late fees, prepayment premium, deferred interest, accrued and unpaid fees, expenses (including without limitation attorneys' fees and expenses), protective advances, and other charges recoverable under the Loan Documents, as further specified in the proposed form of judgment attached hereto as Exhibit 1, together with:

    a.   interest accruing on the Principal Balance at the Pay Rate and default interest at the Default Rate from and after May 1, 2023, through and including the date of transfer of title of the Property pursuant to the foreclosure sale, in the amount of $19,452.11 per day; plus

    b.   all amounts paid or to be paid or advanced by Plaintiff during the pendency of the Foreclosure Action to maintain, protect, or preserve the Property and Plaintiff's Mortgage lien pending consummation of the foreclosure sale, enforce Plaintiff's remedies, as well as any other costs or expenses that are chargeable or reimbursable under the Loan Documents, including without limitation payments or advances for taxes, assessments, insurance premiums,

property inspections, and other charges or expenses of whatever kind , including

without limitation attorneys' fees and related costs and expenses, together with

interest and penalties accrued thereon; and

   c.   less amounts deposited in the Lockbox Account and/or amounts held by

Plaintiff in reserve, escrow, or suspense accounts on the date of transfer of title

of the Property pursuant to a foreclosure sale.

7.     Borrower waives the right to request discovery or seek appointment of a referee or an inquest before the Court to compute the amounts due and owing under the Loan Documents, or the filing of a referee's report of computation in connection therewith, in connection with the First Cause of Action, this Stipulation, or entry of the Foreclosure Judgment.

8.     Plaintiff is entitled to file this Stipulation with the Court, present the Court with the Foreclosure Judgment, and represent to the Court that Borrower has agreed to the immediate entry of the Foreclosure Judgment by the Court.

9.     The Parties agree and consent to, and hereby request, the Court's immediate entry of the Foreclosure Judgment in the form annexed hereto as Exhibit 1 (as such form may be updated, adjusted, and/or corrected to reflect the actual amounts due as of the time of its submission or entry), which Foreclosure Judgment incorporates the amounts set forth in paragraphs 5 and 6 hereof, and the Clerk of the Court shall enter judgment accordingly.

10.    The Property shall be offered for sale pursuant to the Foreclosure Judgment at public auction and as a single parcel, by and under the direction of the referee specified in the Foreclosure Judgment.  The referee shall set the date for the sale after consulting with Plaintiff and its counsel, and shall give public notice of the time and place of said sale according to laws of the

State of New York and the rules and practice of this Court by publishing the same in the New York Law Journal.

11.     The Foreclosure Judgment shall be a final judgment with respect to Plaintiff's First Cause of Action only, and upon entry of the Foreclosure Judgment, the remaining causes of action in the Complaint shall be severed from the First Cause of Action and may continue to be prosecuted and adjudicated notwithstanding the entry of a final Foreclosure Judgment with respect to the First Cause of Action.

12.     Borrower irrevocably waives the right to appeal the entry of the Foreclosure Judgment.

13.     Upon being So-Ordered by the Court, the provisions of this Stipulation shall be deemed adjudged and ordered by the Court.

14.     This Stipulation may be executed in counterparts.  A signature transmitted by facsimile or email .pdf shall be deemed an original for all purposes

*[remainder of page intentionally blank; signature pages follow]*

Dated: New York, New York
      September 22, 2023

Dated: New York, New York
      September 19, 2023

VENABLE LLP

By: _____

Rishi Kapoor
Arie Peled
151 W. 42nd Street, 49th Floor
New York, NY 10036
Telephone: (212) 307-5500
Fax: (212) 307-5598
rkapoor@venable.com
apeled@venable.com

*Attorneys for Plaintiff*

MORRISON COHEN LLP

By: _____

David E. Ross
909 Third Avenue
27th Floor
New York, NY 10022
Telephone: (212) 735-8841
Fax: (917) 522-9941
dross@morrisoncohen.com

*Attorneys for Defendants*
*15 West 55th St. Property LLC,*
*Salim Assa, Steven Finkelstein, and*
*Marilyn Finkelstein*

ORDERED AND ADJUDGED, this ___ day of _____, 2023

HON. JENNIFER H. REARDEN
United States District Judge

Dated: January 19, 2024
New York, New York

- 14 -

58662880

**<u>EXHIBIT 1</u>**

(Proposed) Judgment of Foreclosure and Sale

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WELLS FARGO BANK, NATIONAL ASSOCIATION, as Trustee for the benefit of the registered holders of JPMBB Commercial Mortgage Securities Trust 2015-C27, Commercial Mortgage Pass-Through Certificates, Series 2015-C27, acting by and through its special servicer, LNR Partners, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>15 WEST 55TH ST. PROPERTY LLC; SALIM ASSA; STEVEN FINKELSTEIN; MARILYN FINKELSTEIN; NEW YORK CITY DEPARTMENT OF FINANCE; NEW YORK CITY ENVIRONMENTAL CONTROL BOARD; NEW YORK CITY CRIMINAL COURT; and JOHN DOES # 1 – 50, said John Doe defendants being fictitious and unknown to Plaintiff, it being intended to name all other parties who may have some interest in or lien upon the premises sought to be foreclosed,<br><br>        Defendants. | Case No.: 1:23-cv-00524 |

## JUDGMENT OF FORECLOSURE AND SALE

UPON the Complaint duly filed in this action on January 20, 2023 (ECF No. 1) (the "Complaint") by Plaintiff Wells Fargo Bank, National Association, as trustee for the registered holders of JPMBB Commercial Mortgage Securities Trust, Commercial Mortgage Pass-Through Certificates, Series 2015-C27 ("Plaintiff" or "Lender"), acting by and through its special servicer, LNR Partners, LLC, and the exhibits thereto, the Summons issued to each of the named defendants (ECF Nos. 13-19), the Affidavits of Service establishing due and proper service of the Summons and Complaint on each of the named defendants (ECF Nos. 21-27), and the Notice of Pendency with respect to the above-captioned action and the exhibits thereto filed with the New York County Clerk's Office on March 9, 2023; and that all the proceedings herein have been regular and in accordance with the Rules and Practice of this Court

58716030

AND, upon the Affidavit Consenting to Final Judgment of Foreclosure and Sale ("Foreclosure Judgment Affidavit") executed on behalf of defendant 15 West 55th St. Property LLC ("Borrower"; the Plaintiff and Borrower are collectively referred to herein as the "Parties") by William Fung, the Borrower's authorized representative and signatory and filed in this action on January 20, 2023 (ECF No. 1-12); and the Stipulation Consenting to Final Judgment of Foreclosure and Sale by and between Plaintiff and defendant Borrower, and the exhibits attached thereto ("Foreclosure Judgment Stipulation"), filed in this action on September 25, 2023 (ECF No. 39-1) and So-Ordered by the Court on _____ ___, 2023 (ECF No. __), pursuant to which defendant Borrower stipulated, consented, and agreed, among other things, that (i) Plaintiff is the current holder and owner of the Loan and the Loan Documents, including the Note and Mortgage; (ii) Borrower committed one or more Events of Default under the Loan Documents after the Effective Date, including without limitation, failing to pay the Monthly Debt Service Payment Amount due on the August 6, 2021 Payment Date and on each Payment Date thereafter (the "Payment Defaults"); (iii) the Summons and Complaint were properly served on Borrower and Borrower has waived its rights to interpose any defenses in this action, including but not limited to, the defense of lack of personal jurisdiction; and (iv) the sums set forth in Paragraphs 5 and 6 of the Foreclosure Judgment Stipulation and in the item labeled "Fourth" in Paragraph 7 below are due and owing from Borrower to Plaintiff under the Loan Documents, plus per diem interest, advances and other charges that continue to accrue under the subject Note and Mortgage, (v) Borrower admits the material allegations in the Complaint supporting Plaintiff's First Cause of Action and consents to all of the relief sought against Borrower in the Complaint, including entry, on a final and non-appealable basis, of this judgment of foreclosure and sale, and (vi) Plaintiff and Borrower jointly request the immediate entry of this Judgement of Foreclosure

- 2 -

and Sale on a final and non-appealable basis, directing the sale of the Property (as defined below) as a single parcel; and the Stipulation, by and between Plaintiff, Borrower, and defendants Salim Assa, Steven Finkelstein and Marilyn Finkelstein (together with Mr. Assa and Mr. Finkelstein, the "Guarantors"; Borrower and Guarantors are collectively referred to as "Borrower Defendants"), filed in this action on July 10, 2023 (ECF No. 37-1) and So-Ordered by the Court on July 12, 2023 (ECF No. 38), pursuant to which the Guarantors, among other things, consented to all of the relief sought in the Complaint's First Cause of Action for Foreclosure of the Mortgage.

   **NOW, UPON JOINT APPLICATION** of both Parties:

   **IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

   1. Plaintiff is granted judgment on its First Cause of Action for foreclosure of the subject Mortgage against Borrower (*i.e.*, 15 West 55th St. Property LLC) in the amount of $88,260,179.77 as and for principal, interest, default interest, late fees, prepayment premium, deferred interest, accrued and unpaid fees, expenses (including without limitation attorneys' fees and expenses), protective advances, and other charges recoverable under the Loan Documents as of May 1, 2023, plus interest and default interest from and after May 1, 2023 through and including the date of the transfer of title of the Property pursuant to this Judgment at the *per diem* rate of $19,452.11, and the Clerk of the Court shall enter judgment accordingly.

   2. The mortgaged property described in the Complaint as encumbered by the subject Mortgage (as further described or defined in the Mortgage, the "Property"), which is located at 15 West 55th Street, New York, New York 10019, a/k/a Block 1271, Lot 27 in the Borough of Manhattan, as described more particularly in **Exhibit A** hereto, and which consists of all of Borrower's right, title, and interest in, to, and under the Property, shall be sold in one parcel, at public auction, at the steps of or within the United States District Courthouse for the Southern

District of New York, located at 500 Pearl Street, New York, New York, by and under the direction of Joshua Stein, Esq., having an address at 110 W. 57th St., New York, New York 10019 ((212) 688-3300), who is hereby appointed referee (the "Referee") for that purpose.  The Referee shall set the date of sale after consulting with Plaintiff and its counsel, and shall give public notice of the date, time and place of such sale in accordance with Real Property Actions and Proceedings Law ("RPAPL") § 231 and the laws and practices of this Court by publishing same in the New York Law Journal.

3.     Plaintiff or any other party to this action may become purchaser on said sale. As a precondition for participation in the sale, all potential bidders, other than Plaintiff or its assignee, must place a bid deposit in the amount of $100,000 with the Referee in certified bank check at or before the start of the sale.  The sale of the Property shall take place in accordance with the terms of sale contained herein and any other terms of sale shall be read and/or distributed by the Referee at the sale (the "Terms of Sale").  Any third party who takes assignment of this Judgment of Foreclosure and Sale from Plaintiff will have the same rights with respect to the sale hereunder as Plaintiff, including without limitation the right to participate in the sale without placing a deposit with the Referee.

4.     The Referee shall accept at such sale the highest bid offered by a bidder, who shall be identified upon the Court record (or identified by the Referee in the absence of a Court record), and shall require that such successful bidder immediately pay to the Referee in cash or certified bank check payable to the Referee ten percent of the sum bid and shall execute Terms of Sale for the purchase of the Property, unless such successful bidder is Plaintiff.  In the event Plaintiff shall become the purchaser at the sale, Plaintiff shall not be required to make any deposit thereon.

- 4 -

5.      In the event that the first successful bidder fails to immediately pay the ten percent deposit as provided herein or fails to execute the Terms of Sale immediately following the bidding upon the subject Property, the Property shall thereafter immediately, on the same day, be reoffered at auction.

6.      The closing of title shall take place at the office of the Referee or at such other location as the Referee and Plaintiff may agree, and full payment of the amount bid by the purchaser or its assignee shall be made, on or before thirty (30) days after the sale, unless Plaintiff, in consultation with the Referee, otherwise agrees to a different closing date.  Upon full payment of the sale amount by the successful purchaser at the auction or its assignee, the Referee shall execute and deliver a deed of the Property sold to the purchaser or its assignee.  Any delay or adjournment of the closing date beyond thirty (30) days may be agreed to by Plaintiff in its discretion, in consultation with the Referee, up to ninety (90) days from the date of the sale, any adjournment beyond ninety (90) days shall require approval by the Referee or the Court.

7.      The Referee shall deposit all funds received pursuant to this Judgment in his/her own name as Referee in a federal insured depository institution selected by Plaintiff, and shall thereafter make the following payments and the Referee's checks drawn for that purpose shall be paid by such depository:

First: The statutory fees and commissions of the Referee pursuant to CPLR 8003(b), which shall not exceed $500.00, except as follows.  In the event the sale price exceeds $50,000.00 and additional compensation (including commission) in excess of $500.00 is sought pursuant to CPLR 8003(b), and if no surplus monies are produced by the sale, the parties may present a stipulation, signed by the Referee and counsel for Plaintiff and Borrower, agreeing to a stated sum, to be so-ordered by the Court.  Where surplus monies will be available following distribution of

- 5 -

sums as provided herein, or where the parties are unable to agree to the Referee's proper compensation under CPLR 8003(b), application shall be made to the Court on notice to all parties known to be entitled to claim against any surplus monies, including the owner of the equity redemption.  Such application shall be promptly submitted to the Court within five (5) days of the transfer of the deed and prior to filing the Report of Sale.  The five (5) day period for payment of surplus monies into Court as set forth in RPAPL § 1354(4), and the thirty (30) day period set forth for the filing of the Report of Sale shall be deemed extended pending the decision of the Court regarding such application.

In the event a scheduled sale is postponed or canceled, pursuant to CPLR 8003(a), Plaintiff shall compensate the Referee in the sum of $250.00 for each adjournment or cancellation unless the Referee has requested the delay.  Such compensation may be recouped from the proceeds of sale as a cost to Plaintiff.  This Judgment shall constitute the necessary prior authorization for compensation as set forth herein.

No compensation in excess of $500, including compensation authorized pursuant to CPLR 8003(a) for computation of the sum due to Plaintiff, may be accepted by the Referee without Court approval.

Second: All taxes, assessments, and water rates that are liens upon the property and monies necessary to redeem the property from any sales for unpaid taxes, assessments, or water rates that have not become absolute, and any other amounts due in accordance with RPAPL §1354(2).

Third: The expenses of the sale and the advertising expenses as shown on the bills presented and certified by said Referee to be correct, duplicate copies of which shall be annexed to the report of sale.

58716030

Fourth: The Referee shall pay to Plaintiff or its attorneys the following:

The sum of $88,260,179.77, the amount adjudged to Plaintiff on its claim for foreclosure, which amount includes the unpaid principal amount of $ 73,000,000, interest from November 6, 2021 to May 1, 2023 in the amount of $3,291,083.29, default interest from November 1, 2021 to May 1, 2023 in the amount of $6,586,447.07, late fees in the amount of $37,412.51, prepayment premium in the amount of $730,000.00, deferred interest in the amount of $3,123,791.52, and various accrued and unpaid fees, expenses (including without limitation attorneys' fees and expenses), protective advances, and other charges recoverable under the Loan Documents on or before May 1, 2023 in the amount of $1,491,445.38; together with interest at the contract (*i.e.*, non-default) and default rates as set forth in the Loan Documents[1] continuing to accrue from and after May 1, 2023, through and including the date of transfer of title of the Property at the *per diem* rate of $19,452.11; together with, and upon presentation by Plaintiff of, any amounts paid or to be paid or advanced by Plaintiff during the pendency of the Foreclosure Action to maintain, protect, or preserve the Property and Plaintiff's Mortgage lien pending consummation of the foreclosure sale, enforce Plaintiff's remedies, as well as any other costs or expenses that are chargeable or reimbursable under the Loan Documents, including without limitation payments or advances for taxes, assessments, insurance premiums, property inspections, and other charges or expenses of whatever kind, including without limitation attorneys' fees and related costs and expenses, together with interest and penalties accrued thereon; but less amounts deposited in the Lockbox Account and/or amounts held by Plaintiff in reserve, escrow, or suspense accounts on the date of transfer of title of the Property pursuant to a foreclosure sale. The Referee shall take the receipt of Plaintiff or its attorneys for the amounts paid as directed in item marked

---

[1]   Capitalized terms not defined herein shall have the meanings ascribed to them in the Complaint.

58716030

"Fourth," and shall file it with his/her Report of Sale.

        <u>Fifth</u>: If such Referee intends to apply for a further allowance for his or her fees, he or she may leave upon deposit such amount as will cover such additional allowance to await further Order of the Court thereon after such application is duly made.

       8.     In the event that Plaintiff is the purchaser of the Property at the sale, or in the event that Plaintiff purchases the Property at the sale and assigns its rights to a third party and a valid assignment thereof is filed with the Referee, or in the event that the rights of the purchaser at the sale shall be assigned to and acquired by Plaintiff and a valid assignment thereof is filed with the Referee, the Referee shall not require Plaintiff or its assignee to pay in cash the amount bid at the sale, but shall execute and deliver to Plaintiff or its assignee a deed on the Property sold upon payment by Plaintiff or its assignee of the amounts specified in items marked "First", "Second", and "Third" in paragraph 7 above, or in lieu of payment of taxes, assessments and water rates, or payment of liens or encumbrances placed by a New York City agency which have priority over the foreclosed Mortgage, including interest and penalties thereon, if any, filing with the Referee receipts of the proper municipal authorities showing the payment thereof; and if upon so applying the balance of the amount bid, there shall be a surplus over and above the amount due to Plaintiff pursuant to item marked "Fourth" in paragraph 7 above, Plaintiff shall pay to the Referee, upon delivery to Plaintiff of said Referee's deed, the amount of such surplus which shall be reported in the Referee's Report of Sale.  Any surplus remaining after all payments as herein provided shall be deposited into Court and the Referee shall immediately give notice of such surplus to the owner of the mortgaged Property as identified by Plaintiff at the time of the Sale.

       9.     The Referee shall take the receipt of Plaintiff or Plaintiff's attorneys for the amounts paid as directed in the item marked "Fourth" in paragraph 7 above and file it with his/her Report

of Sale, and deposit the surplus monies, if any, with the Court within five (5) days after the same shall be received, unless such period is extended by the filing of an application for additional compensation as set forth herein, to the credit of this action, to be withdrawn only upon order of the Court.

10.     The Referee shall make his/her Report of Sale under oath showing the disposition of the proceeds of the sale, accompanied by vouchers of the persons to whom payment was made, and file it with the Clerk of the Court, with a copy to Chambers, within thirty (30) days after completing the sale and executing the proper conveyance to the purchaser, or within thirty (30) days of the decision of the Court with respect to any application for additional compensation.

11.     If the proceeds of the sale are insufficient to pay the amount reported due to Plaintiff with interest and costs as aforesaid, the Referee shall specify the amount of such deficiency in his/her Report of Sale, and Plaintiff may seek to recover from one or more Borrower Defendants the whole deficiency or some much thereof as the Court may determine to be just and equitable of the Mortgage debt remaining unsatisfied after the sale of the Property and the application of the proceeds thereof, provided a motion for a deficiency judgment shall be made as prescribed by RPAPL § 1371 within time period specified thereunder, and the amount thereof is determined and awarded by an order of the Court, and only to the extent one or more Borrower Defendants are found personally liable for a deficiency remaining after a sale of the Property pursuant to the Guaranty and/or other Loan Documents (for the avoidance of doubt, the determination and award of a deficiency judgment including a determination of personal liability for a deficiency remaining after a sale of the Property may be made after the time period in which the motion for a deficiency judgment must be made).

12.     The purchaser(s) at the sale shall be let into possession of the Property on

58716030

production of the Referee's deed.

13.     Each and all of the defendants in this action, all persons claiming under any of them, and all persons claiming a lien or interest in the Property after the filing of the Notice of Pendency shall be and hereby are forever barred and foreclosed of all right, claim, lien, title, interest and equity of redemption in the Property and each and every part thereof.

14.     The Property shall be sold in one parcel in "as is" physical order and condition on the day of sale without warranty or representation of any kind, subject to the following: (a) any state of facts that an inspection of the Property would disclose; (b) any state of facts that an accurate survey of the Property would show; (c) covenants, restrictions, easements, rights of way, reservations, and public utility agreements of record, if any; (d) unpaid sums, if any, of taxes, and assessments, water, sewer and vault charges, with interest and penalties, including lien and certificate sales for delinquent items, unless paid from the proceeds of the foreclosure sale; (e) building and zoning ordinances or codes of the municipality, or any of its agencies or instrumentalities, in which the mortgaged Property is located and possible violations of such ordinances or codes; (f) any rights of tenants or persons in possession of the Property; (g) any equity of redemption of the United States of America to redeem the premises within 120 days from the date of sale; and (h) prior or superior lien(s) of record, if any.

15.     Any additional attorneys' fees and related costs and expenses incurred by Plaintiff and recoverable under the Loan that are not already included in the amount awarded in under items marked "Fourth" in paragraph 7 above are hereby severed for assessment following the sale of the Property either at an inquest before the Court, or, alternatively, by stipulation and agreement by and between counsel for the Plaintiff and defendant Borrower.  Any attorneys' fees and related costs and expenses awarded to Plaintiff shall be recoverable solely out of the surplus proceeds, if

58716030

any, from the sale of the Property, or as otherwise provided herein.

16.     In the absence of the Referee, the Court may designate a substitute Referee.

17.     A copy of this Judgment with Notice of Entry shall be served on the Referee, the owner of the equity redemption as of the date of this Judgment, and any other party entitled to notice.

A description of the Property hereinbefore mentioned is annexed hereto as **Exhibit A** and made a part hereof.

E N T E R:

Hon. Jennifer H. Rearden, U.S.D.J.

Dated: January 19, 2024
New York, New York

- 11 -

58716030

**Exhibit A**

(DESCRIPTION OF PROPERTY)

All that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan, County, City and State of New York, bounded and described as follows:

BEGINNING at a point on the northerly side of West 55th Street, distant 200 feet westerly from the corner formed by the intersection of the northerly side of West 55th Street with the westerly side of 5th Avenue;

RUNNING THENCE westerly along the northerly side of West 55th Street, 75 feet;

THENCE northerly along a line parallel with 5th Avenue, 100 feet 5 inches to the center line of the block;

THENCE easterly along a line parallel with West 55th Street and along the center line of the block, 75 feet;

THENCE southerly along a line parallel with 5th Avenue, 100 feet 5 inches to the northerly side of West 55th Street, to the point or place of BEGINNING.

NOTE: Being District, Section, Block(s) 1271, Lot(s) 27, Tax Map of the Borough of New York, County of New York.

NOTE: Lot and Block shown for informational purposes only.

- 12 -

# **EXHIBIT 2**

Foreclosure Judgment Affidavit

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WELLS FARGO BANK, NATIONAL ASSOCIATION, as Trustee for the benefit of the registered holders of JPMBB Commercial Mortgage Securities Trust 2015-C27, Commercial Mortgage Pass-Through Certificates, Series 2015-C27, acting by and through its special servicer, LNR Partners, LLC, | |
| Plaintiff, | Case No.: |
| v. | |
| 15 WEST 55TH ST. PROPERTY LLC; SALIM ASSA; STEVEN FINKELSTEIN; MARILYN FINKELSTEIN; NEW YORK CITY DEPARTMENT OF FINANCE; NEW YORK CITY ENVIRONMENTAL CONTROL BOARD; NEW YORK CITY CRIMINAL COURT; and JOHN DOES # 1 – 50, said John Doe defendants being fictitious and unknown to Plaintiff, it being intended to name all other parties who may have some interest in or lien upon the premises sought to be foreclosed, | **AFFIDAVIT CONSENTING TO FINAL JUDGMENT OF FORECLOSURE AND SALE** |
| Defendants. | |

STATE OF NEW YORK ) 
                   ) ss:
COUNTY OF NEW YORK )

William Fung, being duly sworn, deposes and says:

1.      I am an authorized representative of 15 West 55th St. Property LLC ("Borrower").

I make this affidavit based upon personal knowledge and with the complete authority to bind

Borrower.

**A.      The Property and Loan**

2.      By Loan Agreement dated as of January 13, 2015 (the "Loan Agreement"),[1]

Barclays Bank PLC, a public company registered in England and Wales ("Original Lender"),

---

[1] Due to a scrivener's error at origination of the Loan, the Loan Agreement is dated as of January 13, 2014 rather than the correct date of January 13, 2015. Such scrivener's error does not render

agreed to make a loan to Borrower in the amount of $73,000,000.00 (the "Loan"). All capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the Loan Agreement.

3.      The Loan is evidenced by, inter alia, an Amended, Restated and Consolidated Promissory Note, dated January 13, 2015 in the original principal amount of $73,000,000.00, executed by Borrower in favor of Original Lender (the "Note"). Pursuant to the Note, Borrower, inter alia, agreed to pay to the order of Original Lender the sum of $73,000,000.00 plus interest thereon at the rates set forth therein.

4.      As collateral security for the payment of the Note, Borrower, inter alia, executed, acknowledged and delivered to Original Lender an Amended, Restated and Consolidated Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated as of January 13, 2015 (the "Mortgage"), on the property located at 15 West 55th Street, New York, NY 10019 (as more particularly described in the Mortgage, the "Property"). The Mortgage was duly recorded against the Property in the Office of the City Register of the City of New York (the "City Register's Office") on January 20, 2015 as City Register File Number ("CRFN") 2015000022559 and the mortgage recording tax was duly paid.

5.      As further security for the payment of the Note, Borrower, inter alia, executed, acknowledged and delivered to Original Lender an Assignment of Leases and Rents dated as of January 13, 2015 (the "ALR") pursuant to which Borrower, inter alia, assigned to Original Lender all of Borrower's right to the Leases and Rents (as those terms are defined therein). The ALR was duly recorded on January 20, 2015 in the City Register's Office as CRFN 2015000022560.

---

the Loan Agreement, or any other Loan Document (as defined herein), unenforceable either in whole or in part and Borrower has no defenses, claims or counterclaims to the enforceability of its obligations thereunder based on such scrivener's error.

6.     In order to induce Original Lender to make the Loan to Borrower, Steven Finkelstein, Marilyn Finkelstein and Salim Assa (collectively, the "Guarantors") executed in favor of Original Lender a certain Guaranty of Recourse Obligations of Borrower dated January 13, 2015 (the "Guaranty").

7.     By Assignment of Mortgage dated as of February 25, 2015 and duly recorded in the City Register's Office on March 26, 2015 as CRFN 2015000103411, Assignment of ALR duly recorded in the City Register's Office on March 26, 2015 as CRFN 2015000103412 and allonge firmly affixed to the Note, Original Lender assigned to Wells Fargo Bank, National Association, as Trustee for the Benefit of the Registered Holders of JPMBB Commercial Mortgage Securities Trust 2015-C27, Commercial Mortgage Pass-Through Certificates, Series 2015-C27 ("Plaintiff" or "Lender") all of its right, title and interest in and to the Note, Mortgage and ALR.

8.     Plaintiff is the current holder of the Note, Mortgage, ALR, Guaranty and other certain documents executed by Borrower in connection with the Loan (collectively, together with all amendments or modifications thereto, the "Loan Documents") and all rights relating thereto.

**B.     The Initial Default and Modification Agreement**

9.     Borrower defaulted on its obligations under the Loan Documents by, inter alia: (i) following Domenico Vacca's default on its obligations under the Domenico Vacca Lease, failing to pay the full $2,000,000.00 amount of the Domenico Vacca Letter(s) of Credit and pay all such sums to Plaintiff for deposit in the Rollover Reserve Account in accordance with the requirements of Section 5.1.17(f) of the Loan Agreement; (ii) failing to maintain the full $2,000,000.00 face amount of the Domenico Vacca Letter(s) of Credit in accordance with the requirements of Section 5.1.17(f) of the Loan Agreement; (iii) terminating the Domenico Vacca Lease, which is a Major Lease, without Lender's prior written consent in violation of Section

5.1.17(b) of the Loan Agreement (the "Lease Termination Event of Default"); (iv) failing to pay the Monthly Debt Service Payment Amount due under the Loan Documents on each of the Payment Dates commencing on March 6, 2020 and continuing to January 6, 2021; and (v) failing to fund the Monthly Tax Deposit resulting in Plaintiff funding $113,699.57 to pay for Taxes on or before the date when Taxes became delinquent (collectively, the "Initial Default").

10.     Pursuant to Section 9.4(b)(xii) of the Loan Agreement, Borrower and the Guarantors are personally liable to Lender for the Losses that Lender incurs arising out of or in connection with the Lease Termination Event of Default ("Major Lease Recourse Claim").

11.     To resolve the Initial Default and the Major Lease Recourse Claim, Lender, Borrower and the Guarantors executed certain documents dated January 11, 2021 and effective as of March 6, 2020 (the "Effective Date") that modified the Loan Documents (collectively, the "Modification Agreement").  The Modification Agreement provides, among other things, that if an Event of Default occurs under the Loan Documents (including, without limitation, the Modification Agreement) after the Effective Date, Lender is entitled to file this affidavit consenting to a final judgment of foreclosure and sale.

**C.     Acknowledgments of Borrower**

12.     Borrower hereby agrees and acknowledges that: (i) Plaintiff is the current holder of the Loan Documents; (ii) Borrower has committed one or more Events of Default under the Loan Documents after the Effective Date, including without limitation, failing to pay the Monthly Debt Service Payment Amount due on the August 6, 2021 Payment Date, and on each Payment Date thereafter; (iii) Borrower acknowledges proper service of the summons and complaint and waives its rights to interpose any defenses, including but not limited to, the defense of lack of personal

jurisdiction in the Action; and (iv) the Borrower consents to all of the relief sought against Borrower in the Complaint and the entry of a final judgment in amounts set forth below.

      13.    Borrower further acknowledges and agrees that although the Plaintiff is the current holder of the Loan Documents, this affidavit is given for the benefit of the Plaintiff and its successors and assigns as the case may be, and the name of the plaintiff may be amended at the time this affidavit is submitted to the Court.

      14.    Borrower further acknowledges and represents that Borrower is a limited liability company whose sole member is Black Bear 555, LLC, a New York limited liability company ("Black Bear LLC"). Black Bear LLC, in turn, has two members: (1) West 55th Street Investors LLC ("West 55th LLC") and (2) BP 555, LLC ("BP LLC"), both of which are New York limited liability companies. The members of West 55th LLC are: (1) Salim Assa, an individual that is domiciled in the State of _New York_ and (2) Isaac Assa, an individual that is domiciled in the State of _New York_. The members of BP LLC are: (1) Steven Finkelstein, an individual that is domiciled in the State of _New York_, (2) Steven Caspi, an individual that is domiciled in the State of _New York_, and (3) Black Bear 123, LLC ("BB 123 LLC"), a New York limited liability company. BB 123 LLC's members, in turn, are: (1) Heng Sang Realty Corp a/k/a HSR Corp., a Delaware corporation, (2) Arthur Bellini, an individual that is domiciled in the State of _New York_, (3) Joel Leitner, an individual that is domiciled in the State of _New York_, (4) Siobhan Ryan, an individual that is domiciled in the Country of _South Africa_, and (5) Cillian Ryan, an individual that is domiciled in the Country of _South Africa_.

15.     As of July 1, 2022, the total amount due under the Loan Documents is $84,059,394.34 (the "Outstanding Indebtedness"):

| | |
|---|---|
| Unpaid Principal Balance | $73,000,000.00 |
| Interest at Pay Rate (3.00%) (Per diem $6,083.33) | $2,220,416.64 |
| Interest at Default Rate (5.00%) (Per diem $11,890.71) | $2,737,806.21 |
| Late Fees | $37,412.51 |
| Defeasance Amount | $2,784,618.84 |
| Deferred Interest | $2,322,413.89 |
| Protective Advances | $327,592.14 |
| Interest on Advances | $44,913.50 |
| Liquidation Fee | $835,890.90 |
| Special Servicing Fee | $143,365.28 |
| Legal Fees | $134,413.54 |
| Other Fees, Costs and Expenses | $33,724.19 |
| Credit Suspense/Reserve Funds | ($563,173.30) |
| **Total Amount Due:** | **$84,059,394.34** |

In addition to the foregoing, Borrower acknowledges and agrees that it is indebted to Plaintiff for additional fees and costs, together with any property protection advances and attorneys' fees and costs, incurred by Plaintiff after July 1, 2022, which amounts shall be added to the Outstanding Indebtedness.

Individually, and on behalf of:

15 WEST 55TH ST. PROPERTY LLC
a Delaware limited liability company

By: _____
Name: William Fung
Title: Authorized Signatory

Sworn to before me this
23 day of September, 2022

_____
Notary Public

Jacqueline Caraballo
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01CA6352671
Qualified in Kings County
Commission Expires    January 03, 2025

**EXHIBIT 3**

Notice of Pendency

Rishi Kapoor
Arie Peled
VENABLE LLP
Rockefeller Center
1270 Avenue of the Americas
New York, New York 10020

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WELLS FARGO BANK, NATIONAL ASSOCIATION, as Trustee for the benefit of the registered holders of JPMBB Commercial Mortgage Securities Trust 2015-C27, Commercial Mortgage Pass-Through Certificates, Series 2015-C27, acting by and through its special servicer, LNR Partners, LLC, | Case No.: 1:23-cv-00524 (JHR) |
|         Plaintiff, | |
|   v. | |
| 15 WEST 55TH ST. PROPERTY LLC; SALIM ASSA; STEVEN FINKELSTEIN; MARILYN FINKELSTEIN; NEW YORK CITY DEPARTMENT OF FINANCE; NEW YORK CITY ENVIRONMENTAL CONTROL BOARD; NEW YORK CITY CRIMINAL COURT; and JOHN DOES # 1 – 50, said John Doe defendants being fictitious and unknown to Plaintiff, it being intended to name all other parties who may have some interest in or lien upon the premises sought to be foreclosed, | **NOTICE OF PENDENCY** |
|         Defendants. | |

NOTICE IS HEREBY GIVEN, that an action has been commenced and is pending in the United States District Court for the Southern District of New York upon a Complaint (the "Complaint") of the above-named plaintiff, Wells Fargo Bank, National Association, as trustee for the registered holders of JPMBB Commercial Mortgage Securities Trust, Commercial Mortgage Pass-Through Certificates, Series 2015-C27 ("Plaintiff"), acting by and through its special servicer, LNR Partners, LLC, against the above-named defendants, 15 West 55th St. Property LLC, Salim Assa, Steven Finkelstein, Marilyn Finkelstein, New York City Department of Finance, New York City Environmental Control Board, New York City Criminal Court, and John Does #1-50, for the foreclosure of an Amended, Restated and Consolidated Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "Mortgage"), dated as of January 13, 2015, executed by 15 West 55th St. Property LLC in favor of Barclays Bank PLC ("Original Lender"), its successors and assigns, to secure payment of the principal sum of $73,000,000, with

interest, expenses (including attorneys' fees and disbursements), protective advances and all other amounts due under the Note (as defined in the Complaint) or the Loan Documents (as defined in the Complaint), which Mortgage was duly filed and recorded in the Office of the City Register of the City of New York (the "Register") on January 20, 2015, under CRFN 2015000022559, which Mortgage was then assigned by Original Lender to Plaintiff pursuant to an Assignment of Mortgage effective as of February 25, 2015 and duly filed and recorded in the Register on March 26, 2015, under CRFN 2015000103411.

AND NOTICE IS FURTHER GIVEN, that the mortgaged premises affected by this foreclosure action were, at the time of the commencement of said action, and at the time of the filing of this notice, situated in the **Borough of Manhattan, Block 1271, Lot 27**, on the land and tax map of the County, City and State of New York, and are more particularly described as follows:

See **Exhibit A** "Legal Description" attached hereto and made a part hereof.

The mortgaged premises are located at 15 West 55th Street, New York, New York 10019.

TOGETHER with all right, title and interest of the defendant(s) in and to the land lying in the streets and roads in front of and adjoining said mortgaged premises.

A copy of the Complaint (excluding exhibits) commencing this action is attached hereto as **Exhibit B**.

THE CLERK OF THE COUNTY OF NEW YORK is hereby directed to index this Notice of Pendency of Action against the following defendants:

15 West 55th St. Property, LLC, Salim Assa, Steven Finkelstein, Marilyn Finkelstein, New York City Department of Finance, New York City Environmental Control Board, New York City Criminal Court; and as against the premises situated in the **Borough of Manhattan, Block 1271, Lot 27**, on the land and tax map of the County, City and State of New York.

*[remainder of page intentionally left blank; signature block follows]*

Dated: New York, New York
      March 9, 2023

Respectfully submitted,

**VENABLE LLP**

By: _____

Rishi Kapoor
Arie Peled
Rockefeller Center
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
Tel.: (212) 307-5500
Fax: (212) 307-5598
rkapoor@venable.com
apeled@venable.com

*Attorneys for Plaintiff*

**EXHIBIT A**
(LEGAL DESCRIPTION)

All that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan, County, City and State of New York, bounded and described as follows:

BEGINNING at a point on the northerly side of West 55th Street, distant 200 feet westerly from the corner formed by the intersection of the northerly side of West 55th Street with the westerly side of 5th Avenue;

RUNNING THENCE westerly along the northerly side of West 55th Street, 75 feet;

THENCE northerly along a line parallel with 5th Avenue, 100 feet 5 inches to the center line of the block;

THENCE easterly along a line parallel with West 55th Street and along the center line of the block, 75 feet;

THENCE southerly along a line parallel with 5th Avenue, 100 feet 5 inches to the northerly side of West 55th Street, to the point or place of BEGINNING.

NOTE: Being District , Section , Block(s) 1271, Lot(s) 27, Tax Map of the Borough of New York, County of New York.

NOTE: Lot and Block shown for informational purposes only.

**EXHIBIT B**
(Complaint)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WELLS FARGO BANK, NATIONAL ASSOCIATION, as Trustee for the benefit of the registered holders of JPMBB Commercial Mortgage Securities Trust 2015-C27, Commercial Mortgage Pass-Through Certificates, Series 2015-C27, acting by and through its special servicer, LNR Partners, LLC, | |
| Plaintiff, | Case No.: 1:23-cv-00524 |
| v. | |
| 15 WEST 55TH ST. PROPERTY LLC; SALIM ASSA; STEVEN FINKELSTEIN; MARILYN FINKELSTEIN; NEW YORK CITY DEPARTMENT OF FINANCE; NEW YORK CITY ENVIRONMENTAL CONTROL BOARD; NEW YORK CITY CRIMINAL COURT; and JOHN DOES # 1 – 50, said John Doe defendants being fictitious and unknown to Plaintiff, it being intended to name all other parties who may have some interest in or lien upon the premises sought to be foreclosed, | |
| Defendants. | |

## COMPLAINT

Plaintiff Wells Fargo Bank, National Association, as trustee for the registered holders of JPMBB Commercial Mortgage Securities Trust, Commercial Mortgage Pass-Through Certificates, Series 2015-C27 ("Plaintiff" or "Lender"), acting by and through its Special Servicer, LNR Partners, LLC, files this Complaint (the "Complaint") against defendants, and in support thereof alleges as follows:

## PARTIES

1.     Plaintiff Wells Fargo Bank, National Association, acting solely in its capacity as trustee, is a national banking association that serves as the trustee of a commercial mortgage-backed securities trust. Plaintiff's main office, as specified in its Articles of Association, is located in Sioux Falls, South Dakota.

2.     Defendant 15 West 55th St. Property LLC ("Borrower") is a limited liability company organized under the laws of the State of Delaware. Borrower is named as a defendant to extinguish all estate, right, title, and interest it holds, including its interest as the record fee owner, in and to certain real property located in the Borough of Manhattan, and within the City, County, and State of New York, at 15 West 55th Street, New York, New York 10019, designated as Block 1271, Lot 27 on the Tax Map for the County of New York (the "Real Property"), and the premises, fixtures, improvements, equipment, furnishings and related personal property located thereon and/or appurtenant thereto (the "Personal Property," and together with the Real Property, as more particularly described in the Mortgage (as defined herein), the "Property"), and to determine its liabilities and obligations under the Loan Documents (as defined herein).

3.     Defendant Salim Assa a/k/a Solly Assa ("Mr. Assa") is a natural person who is a citizen of and domiciled in the State of New York, and who, upon information and belief, maintains an address at 721 Fifth Avenue, New York, New York 10022. Mr. Assa is named as a defendant to obtain a judgment for amounts Mr. Assa owes to Plaintiff in his personal capacity as a guarantor under certain guaranties that Mr. Assa executed in connection with the Loan (as defined herein), and to preserve Plaintiff's right to seek a deficiency judgment or other amounts for which Mr. Assa may be liable.

4.     Defendant Steven Finkelstein ("Mr. Finkelstein") is a natural person who is a citizen of and domiciled in the State of New York, and who, upon information and belief, maintains an address at c/o FTRE Real Estate, 111 Brook Street, Scarsdale, New York 10583. Mr. Finkelstein is named as a defendant to obtain a judgment for amounts Mr. Finkelstein owes to Plaintiff in his personal capacity as a guarantor under certain guaranties that Mr. Finkelstein

executed in connection with the Loan (as defined herein), and to preserve Plaintiff's right to seek a deficiency judgment or other amounts for which Mr. Finkelstein may be liable.

5.      Defendant Marilyn Finkelstein ("Ms. Finkelstein," and together with Mr. Assa and Mr. Finkelstein, the "Guarantors") is a natural person who is a citizen of and domiciled in the State of New York, and who, upon information and belief, maintains an address at c/o FTRE Real Estate, 111 Brook Street, Scarsdale, New York 10583.  Ms. Finkelstein is named as a defendant to obtain a judgment for amounts Ms. Finkelstein owes to Plaintiff in her personal capacity as a guarantor under certain guaranties that Ms. Finkelstein executed in connection with the Loan (as defined herein), and to preserve Plaintiff's right to seek a deficiency judgment or other amounts for which Ms. Finkelstein may be liable.

6.      Defendant New York City Department of Finance ("NYC-DOF") is an agency and/or instrumentality of the City of New York that assesses and collects taxes, including general business taxes.  NYC-DOF is made a defendant herein for the purpose of foreclosing those liens, if any, against the Property which accrued or which may accrue subsequent to the lien of the Mortgage (as defined herein) by virtue of possible unpaid New York City business taxes which are or may be due or may become due to NYC-DOF from any owner of record of the Property.

7.      Defendant New York City Environmental Control Board ("NYC-ECB") is an agency and/or instrumentality of the City of New York.  NYC-ECB is made a defendant due to possible unpaid amounts that may be owed in connection with the Property and for the purpose of foreclosing liens against the Property which accrued or which may accrue subsequent to the lien of the Mortgage (as defined herein) by virtue of possible unpaid amounts which are or may be due or may become due to NYC-ECB from any owner of record of the Property, including without limitation the following violations:

   i.  Violation No. 35174395L in the amount of $745.96 plus interest;

   ii.  Violation No. 38235502N in the amount of $391.78 plus interest;

   iii.  Violation No. 11641174R in the amount of $1,160.82 plus interest;

   iv.  Violation No. 50047466L in the amount of $3,027.04 plus interest;

   v.  Violation No. 50047467N in the amount of $5,045.07 plus interest;

   vi.  Violation No. 36023588X in the amount of $2,999.12 plus interest;

   vii.  Violation No. 35040391K in the amount of $186.30 plus interest; and

   viii.  Violation No. 37009263N in the amount of $8,153.25 plus interest.

  8.  Defendant New York City Criminal Court ("NYC-CC") is an agency and/or instrumentality of the City of New York. NYC-CC is made a defendant due to possible unpaid amounts that may be owed in connection with the Property and for the purpose of foreclosing liens against the Property which have accrued or which may accrue subsequent to the lien of the Mortgage (as defined herein) by virtue of possible unpaid amounts which are or may be due or may become due to NYC-CC from any owner of record of the Property, including without limitations any unpaid amounts and/or liens against the Property resulting from a judgment in the amount of $1,500, docketed on or about February 10, 2016, under Index No. 2015SN054484.

  9.  Defendants John Doe #1 through John Doe #50 (fictitious names) are named as defendants to represent all other persons and entities who may be in possession of or have some interest in or lien upon the Property that is subordinate to the lien of the Mortgage (as defined herein) and may be foreclosed and terminated pursuant to this action (other than those subordinate interests or liens to which a foreclosure sale of the Property will be made subject, as specified herein).

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 exclusive of interest, costs, and attorneys' fees, and complete diversity of citizenship exists between Plaintiff, a citizen of South Dakota, and each of the defendants, which are citizens of New York, Delaware, and South Africa.

11.     Pursuant to 28 U.S.C. § 1348, Plaintiff is a citizen of South Dakota for purposes of diversity jurisdiction because it is a national banking association whose main office, as specified in its Articles of Association, is located in the State of South Dakota.

12.     Borrower is a limited liability company whose sole member is non-party Black Bear 555, LLC, a New York limited liability company ("Black Bear LLC"). Black Bear LLC, in turn, has two members: (1) non-party West 55th Street Investors LLC ("West 55th LLC") and (2) non-party BP 555, LLC ("BP LLC"), both of which are New York limited liability companies. The members of West 55th LLC are: (1) Mr. Assa, and (2) non-party Isaac Assa, both of whom are individuals that are citizens of and domiciled in the State of New York. The members of BP LLC are: (1) Mr. Finkelstein, an individual that is a citizen of and domiciled in the State of New York, (2) non-party Steven Caspi, an individual that is a citizen of and domiciled in the State of New York, and (3) non-party Black Bear 123, LLC ("BB 123 LLC"), a New York limited liability company. BB 123 LLC's members, in turn, are: (1) non-party Heng Sang Realty Corp a/k/a HSR Corp., a Delaware corporation, whose principal place of business is in New York, (2) non-party Arthur Bellini, an individual that is a citizen of and domiciled in the State of New York, (3) non-party Joel Leitner, an individual that is a citizen of and domiciled in the State of New York, (4) non-party Siobhan Ryan, an individual that is a citizen of and domiciled in the Republic of

5

South Africa, and (5) non-party Cillian Ryan, an individual that is a citizen of and domiciled in the Republic of South Africa.

13.     Defendants NYC-DOF, NYC-ECB, and NYC-CC are citizens of the State of New York.

14.     This Court has personal jurisdiction over the defendants pursuant to Federal Rule of Civil Procedure 4, and CPLR 301, 302(a)(1) and 302(a)(4). This Court also has personal jurisdiction over the Borrower and Guarantors under Section 10.3(b) of the subject Loan Agreement (as defined herein) and Section 7.16(b) of the Payment Guaranty (as defined herein), respectively, pursuant to which the Borrower and Guarantors irrevocably submitted to the jurisdiction of this Court.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the property that is the subject of this action is located in the Southern District of New York, in New York County, New York.

## FACTS

### I.     The Loan and Related Loan Documents

16.     On or about January 13, 2015, Barclays Bank PLC ("Original Lender") made a loan to Borrower in the original principal amount of $73,000,000 (the "Loan").

17.     To evidence its indebtedness under the Loan, Borrower, as obligor, duly executed, acknowledged and delivered to Original Lender, as obligee, an Amended, Restated, and Consolidated Promissory Note, dated as of January 13, 2015, in the original principal amount of $73,000,000 (the "Note"). The Note consolidated certain pre-existing promissory notes under which Borrower was obligated into a single promissory note and obligated Borrower to pay

Original Lender, its successors or assigns, the principal sum of $73,000,000, plus interest and other amounts owing under the Loan.

18.     A true and correct copy of the Note is attached hereto as **Exhibit 1**.

19.     To secure its payment and performance obligations under the Loan, Borrower, as obligor and mortgagor, executed and delivered to Original Lender, as obligee and mortgagee, an Amended, Restated and Consolidated Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated as of January 13, 2015 (the "Mortgage"). The Mortgage consolidated certain pre-existing mortgages to create a single first-priority mortgage lien on the Property and granted a security interest in the Property to Original Lender, its successors or assigns, to secure Borrower's obligations under the Loan, including its obligations under the Note and Mortgage.

20.     A true and correct copy of the Mortgage is attached hereto as **Exhibit 2**.

21.     The Mortgage was duly recorded in the Office of the City Register of the City of New York (the "Register") on January 20, 2015, under CRFN 2015000022559.

22.     Upon information and belief, any applicable recording tax was duly paid at the time of recording of the Mortgage.

23.     To further secure its payment and performance obligations under the Loan, including its obligations under the Note and Mortgage, Borrower executed and delivered to Original Lender an Assignment of Leases and Rents dated as of January 13, 2015 (the "ALR"), pursuant to which Borrower assigned to Original Lender, its successors and assigns, all of Borrower's right, title, and interest in and to, among other things, all "Leases" (as defined in the Mortgage) and "Rents" (as defined in the Mortgage) related to or derived from the Property.

24.     A true and correct copy of the ALR is attached hereto as **Exhibit 3**.

25.     The ALR was duly filed and recorded in the Register on January 20, 2015, under CRFN 2015000022560.

26.     The Loan is further governed by a Loan Agreement, effective as of January 13, 2015, that Borrower executed and delivered to Original Lender (the "Loan Agreement," and together with the Note, Mortgage, ALR, Recourse Guaranty (as defined herein) and all other documents and agreements referred to, created, or contemplated thereunder—including all amendments and modifications thereto—the "Loan Documents"),[1] pursuant to which the Borrower agreed to comply with additional terms, provisions, and obligations with respect to the Loan for the benefit of the Original Lender, its successors and assigns.

27.     A true and correct copy of the Loan Agreement is attached hereto as **Exhibit 4**.

28.     As Borrower has previously acknowledged and agreed, due to a scrivener's error at origination of the Loan, the Loan Agreement inadvertently reflects a date of January 13, 2014, rather than January 13, 2015, the true effective date of the agreement. *See* Ex. 12 (Consent to Foreclosure) ¶ 2 n.1.

29.     As an inducement for Original Lender to make the Loan and to further secure repayment of the Loan, the Guarantors executed and delivered a Guaranty of Recourse Obligations of Borrower dated as of January 13, 2015 (the "Recourse Guaranty") in favor of Original Lender, its successors and assigns.

30.     A true and correct copy of the Recourse Guaranty is attached hereto as **Exhibit 5**.

31.     Pursuant to the Recourse Guaranty, the Guarantors agreed, in their personal capacity, to unconditionally guarantee, jointly and severally, the prompt and full repayment of "all

---

[1]  Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Loan Documents.

8

obligations and liabilities of Borrower for which Borrower shall be personally liable pursuant to Section 9.4 of the Loan Agreement."

32. The Note, Mortgage, ALR, Loan Agreement, and Recourse Guaranty are governed by New York law.

**II. Transfer of the Loan to Plaintiff**

33. Original Lender transferred its interest in and to the Loan and Loan Documents to Plaintiff as set forth below.

34. Original Lender transferred its interest in the Note to Plaintiff. Original Lender physically delivered the Note to Plaintiff and executed an Allonge to the Note in Plaintiff's favor (the "Allonge"). The Allonge is firmly affixed to the Note, a true and correct copy of which is attached hereto as Exhibit 1.

35. Original Lender assigned its interest in the Mortgage and underlying consolidated mortgages, "[t]ogether with any and all notes and obligations therein described . . . ," to Plaintiff pursuant to an Assignment of Mortgage effective as of February 25, 2015 (the "Assignment of Mortgage").

36. A true and correct copy of the Assignment of Mortgage is attached hereto as **Exhibit 6**.

37. The Assignment of Mortgage was duly filed and recorded in the Register on March 26, 2015, under CRFN 2015000103411.

38. Original Lender assigned its interests in the ALR to Plaintiff pursuant to an Assignment of Assignment of Leases and Rents effective as of February 25, 2015 (the "ALR Assignment").

39.     The ALR Assignment was duly filed and recorded in the Register on March 26, 2015, under CRFN 2015000103412.

40.     A true and correct copy of the ALR Assignment is attached hereto as **Exhibit 7**.

41.     Original Lender also assigned all of its right, title, and interest in and to the Loan and all Loan Documents to Plaintiff pursuant to a General Assignment effective as of February 25, 2015 (the "General Assignment").

42.     A true and correct copy of the General Assignment is attached hereto as **Exhibit 8**.

43.     By virtue of the foregoing, Plaintiff is the owner and holder of the Note, Mortgage, ALR, Recourse Guaranty, and all other Loan Documents.

44.     LNR is the Special Servicer of the Loan and attorney-in-fact on behalf of the Plaintiff, and in such capacities has the right to initiate, prosecute, and maintain this action on behalf of Plaintiff, as owner and holder of the Loan and Loan Documents.

## III.     The January 2021 Loan Modification

45.     Following the occurrence of various defaults committed by Borrower under the Loan, Lender, Borrower, and Guarantors entered into a Loan Modification Agreement dated as of January 11, 2021 (the "Modification Agreement") and effective as of March 6, 2020 (the "Effective Date").

46.     Pursuant to the Modification Agreement, the parties acknowledged and agreed, among other things, (1) that several enumerated "Defaults and Events of Default have occurred and are continuing under the Loan Documents" (collectively, the "Pre-Modification Defaults"), including without limitation Borrower's termination of the Domenico Vacca Lease (as that term is used in the Modification Agreement and Loan Documents), which was designated as a "Major Lease," without Lender's prior written consent in violation of Section 5.1.17(b) of the Loan

10

Agreement, (2) that Borrower and Guarantors were personally liable to Lender for losses that Lender incurred in connection with the unauthorized termination of the Domenico Vacca Lease, (3) to resolve Borrower's and Guarantors' liability resulting from the Pre-Modification Defaults and modify the Loan and Loan Documents pursuant to the terms set forth in the Modification Agreement.

47. A true and correct copy of the Modification Agreement is attached hereto as **Exhibit 9**.

## IV. Borrower's Post-Modification Payment Defaults

48. Pursuant to Article 4 of the Modification Agreement, among other provisions of the Loan Documents, Borrower was obligated to pay monthly installments of interest and other amounts on the sixth day of each calendar month (or the immediately preceding business day) (the "Payment Date").

49. Pursuant to Section 5.1(a) of the Modification Agreement, among other provisions of the Loan Documents, "if Borrower [] fail[s] to pay any payment provided for in [the Modification] Agreement or the other Modification Documents when the same shall become due and such non-payment continues for seven (7) days following notice to Borrower that the same is due and payable," it shall constitute an Event of Default.

50. Borrower failed to pay the full amount due under the Modification Agreement on August 6, 2021, and on each Payment Date thereafter prior to the date the Loan was accelerated.

51. By letter dated October 25, 2021 (the "2021 Default Notice"), Lender sent notice to Borrower, among other notice parties, that, beginning on August 6, 2021, Borrower failed to pay the monthly amounts due under the Loan Documents, and demanded payment of all unpaid amounts then due and owing.

52.     A true and correct copy of the 2021 Default Notice is attached hereto as **Exhibit 10**.

53.     Borrower failed to pay the past due amounts specified in the 2021 Default Notice within seven (7) days of Lender's 2021 Default Notice.

54.     The continuation of Borrower's non-payment of its outstanding monthly payments for seven days after being given notice pursuant to the 2021 Default Notice that such amounts were due and payable gave rise to Events of Default under Section 5.1(a) of the Modification Agreement, among other provisions of the Loan Documents (the "Payment Defaults").

55.     Pursuant to Section 5.2(a) of the Modification Agreement, "[u]pon the occurrence of an Event of Default after the Effective Date" of the Modification Agreement (*i.e.*, March 6, 2020), Lender may, "without further notice," "exercise any or all of Lender's rights and remedies under [the Modification] Agreement and the Loan Documents . . . including, but not limited to . . . demanding immediate payment of the entire Debt, . . . [and] commencing . . . foreclosure proceedings against Borrower, the Property and/or the other Collateral . . . and enforcing the Guaranty . . . ."

56.     By letter dated November 30, 2021 (the "Acceleration Notice"), Lender sent notice to Borrower, among other notice parties, of the Payment Defaults and that pursuant to the provisions of the Loan Documents, the full amount of the unpaid balance of the Loan and all amounts owed under the Loan Documents had been accelerated, such that the entire unpaid principal balance of the Loan, as well as all accrued interest and other amounts owing under the Loan Documents, was immediately due and payable.

57.     A true and correct copy of the Acceleration Notice is attached hereto as **Exhibit 11**.

58.     Borrower has failed to pay the full amount due on the Loan and remains in default under the Modification Agreement and other Loan Documents.

59.     Borrower agreed that if it defaulted on its Loan obligations after the Effective Date, it would consent to entry of a judgement of foreclosure and sale.

60.     Specifically, pursuant to Section 5.3 of the Modification Agreement, Borrower agreed that, upon the occurrence of an Event of Default after the Effective Date and demand by Lender, it would execute and deliver to Lender an "agreed stipulation, consent or similar documentation a . . . which provides for the entry of . . . a final and non-appealable judgment of foreclosure . . . as well as . . . specifying the total amount [owed by Borrower] under the Loan Documents." In addition, prior to the commencement of a foreclosure action, the Borrower agreed to provide Lender with a sworn "Affidavit Consenting to Final Judgment" of foreclosure that Lender may file with the Court.

61.     On behalf of Borrower, Borrower's authorized representative and signatory, non-party William Fung, executed and delivered to Plaintiff, an Affidavit Consenting to Final Judgment of Foreclosure and Sale, sworn to before a notary public on September 23, 2022 (the "Consent to Foreclosure").

62.     A true and correct copy of the Consent to Foreclosure is attached hereto as **Exhibit 12.**

63.     Pursuant to the Consent to Foreclosure, Borrower acknowledged and agreed that:

   (i)     Plaintiff is the current holder of the Loan Documents;

   (ii)    Borrower has committed one or more Events of Default under the Loan Documents after the Effective Date, including without limitation, failing to pay the Monthly Debt Service Payment Amount due on the August 6, 2021 Payment Date, and on each Payment Date thereafter;

       (iii)    the summons and complaint have been properly served on Borrower and Borrower waives its right to interpose any defenses, including but not limited to, the defense lack of personal jurisdiction in this Action; and

       (iv)    Borrower consents to all of the relief sought against Borrower in this Complaint.

Ex.12 (Consent to Foreclosure) ¶ 12.

      64.    Pursuant to Sections 5.1.12 and 10.13(a) of the Loan Agreement, Section 3.8(b) of the Modification Agreement, and Section 6.06 of the Mortgage, among other provisions of the Loan Documents, Borrower is liable for and shall pay, in addition to all other sums owing under the Loan, all costs, expenses, and fees, including but not limited to reasonable attorneys' fees and expenses, incurred in connection with Plaintiff's enforcement and collection of the sums due from Borrower under the Loan.

## V.    The Guarantors' Liability Under the Recourse Guaranty

      65.    Pursuant to Section 9.4(c) of the Loan Agreement, Borrower agreed that the non-recourse provisions of the Loan, by which Lender agreed that it would not enforce Borrower's liability and obligations in an action seeking a money judgment against Borrower, would be null and void and the Loan would be fully recourse against the Borrower personally for the full amount of the Debt upon the occurrence of any of the enumerated triggering events, which include, among others, the following: (i) Borrower defaults under Section 5.2.10 of the Loan Agreement or Article 7 of the Mortgage (an "Impermissible Transfer Full Recourse Event"), (ii) Borrower defaults under the cash management provisions found in Article III of the Loan Agreement (a "Cash Management Full Recourse Event"), or (iii) Borrower commits fraud in connection with the execution and delivery of any of the Loan Documents (a "Fraud Full Recourse Event").

      66.    Pursuant to Section 9.4(b) of the Loan Agreement, Borrower agreed that it shall be personally liable to Lender for the "Losses" (as defined in the Loan Agreement) incurred by Lender

14

arising out of or in connection with, among other things, the following actions or inaction by Borrower: (i) Borrower's intentional misrepresentation in connection with the execution and the delivery of any Loan Documents or otherwise in connection with the Loan (a "Misrepresentation Recourse Event"), or (ii) Borrower's misapplication or misappropriation of any Rents (a "Misappropriation Recourse Event").

67.     Pursuant to the Recourse Guaranty, the Guarantors "absolutely and unconditionally guarantee[d], jointly and severally, to Lender the prompt and unconditional payment of the Guaranteed Recourse Obligations of Borrower," which is defined as "all obligations and liabilities of Borrower for which Borrower shall be personally liable pursuant to Section 9.4 of the Loan Agreement." Ex. 5 (Recourse Guaranty) at 1.

## A.     The Impermissible Transfer Full Recourse Event

68.     Section 5.2.10(a) of the Loan Agreement provides: "Borrower shall not sell, convey, mortgage, grant, bargain, encumber, pledge, assign, grant options with respect to, or otherwise transfer or dispose of . . . the Property or any part thereof or any legal or beneficial interest therein . . . (collectively, a "Transfer"), other than pursuant to Leases of space in the Improvements to tenants in accordance with the provisions of Section 5.1.17 [of the Loan Agreement] without . . . the prior written consent of Lender . . . ."

69.     Section 5.2.10(b)(ii) specifies that a "Transfer" includes, among other things, "a sale, assignment or other transfer of, or the grant of a security interest in, Borrower's right, title and interest in and to any Leases or any Rents."

70.     Similarly, Article 7 of the Mortgage provides that Borrower shall not "Transfer the Property or any part thereof or any interest therein or permit or suffer the Property or any part

thereof or any interest therein to be transferred other than as expressly permitted pursuant to the terms of the Loan Agreement."

71. Borrower entered into a Marketing Management Services Agreement with YDC INC. d/b/a REZI ("REZI"), dated as of October 13, 2019 (the "REZI Agreement").

72. Borrower never sought or obtained Lender's consent to enter into the REZI Agreement.

73. In November 2021, Borrower disclosed the existence of the REZI agreement and provided a copy of the agreement to Lender for the first time.

74. A true and correct copy of the REZI Agreement that Borrower provided to Lender is attached hereto as **Exhibit 13**.

75. Pursuant to Sections 2, 5.2 and 6 of the REZI Agreement, Borrower sold, assigned, and transferred to REZI the absolute right to lease, on behalf of the Borrower, the apartment units in the Property listed in Exhibit A to the REZI Agreement (the "REZI Apartments")—which consist of 14 of the 31 residential units in the Property—and to set, collect and retain the Rents associated with those units for a period of approximately five years, in exchange for an upfront payment by REZI, and certain pre-agreed monthly payments for each of the REZI Apartments (as further defined in the REZI Agreement, the "Monthly Payment").

76. Specifically, the REZI Agreement provides, among other things, that for each of the REZI Apartments: (i) REZI "shall bill the Tenants for the rents and other charges . . . and shall . . . collect and enforce the collection of all rents and other charges payable by the Tenants under their Leases," and (ii) REZI "shall be entitled to retain an amount equal to the difference between the rent [it] collect[s] from the Tenants and the Monthly Payment [REZI pays to Borrower] for the applicable Apartment."

16

77.     By agreeing to let REZI set, collect, and retain Rents derived from the Property, Borrower sold, assigned, and/or transferred to REZI some or all of "Borrower's right, title and interest in and to" the Leases and Rents associated with the REZI Apartments, in violation of Section 5.2.10 of the Loan Agreement (the "Impermissible REZI Transfer").

78.     Accordingly, Borrower's entry into the REZI Agreement constitutes an Impermissible Transfer Full Recourse Event, and renders each of the Guarantors, jointly and severally, immediately, absolutely and unconditionally liable for the full amount of the Debt.

**B.     The Cash Management Full Recourse Events**

79.     Pursuant to Section 3.1(a) of the Loan Agreement, Borrower covenanted and agreed to "establish, and . . . maintain, an account (the "Lockbox Account") . . . in the name of Borrower for the sole and exclusive benefit of Lender into which Borrower shall deposit, or cause to be deposited, all Gross Income from Operations . . . ."

80.     As defined in the Loan Agreement, "Gross Income from Operations" consists of, among other amounts, "all income . . . derived from the ownership and operation of the Property from whatever source, including but not limited to the Rents" paid by tenants of the Property. *See* Ex. 4 (Loan Agreement) § 1.1.

81.     Pursuant to Section 3.2 of the Loan Agreement, Borrower "represent[ed], warrant[ed] and covenant[ed]" that "Rents or other revenues or income from the ownership and operation of the Property" shall not be deposited into any account other than the Lockbox account designated in Article III of the Loan Agreement.

82.     Pursuant to the REZI Agreement, Borrower permitted REZI to collect and retain some or all of the Rents paid by tenants of the REZI Apartments since on or about October 13,

17

2019, without requiring REZI to deposit all such Rents into the Lockbox Account, in violation of Article III of the Loan Agreement.

83.    Upon information and belief, based on the terms of the REZI Agreement and disclosures made by the Borrower in connection with the Loan, some or all of the Rents paid by the tenants of the REZI Apartments were not deposited into the Lockbox Account and instead were transferred to and retained by REZI (the "REZI Cash Management Defaults").

84.    The REZI Cash Management Defaults constitute Cash Management Full Recourse Events, and render each of the Guarantors, jointly and severally, immediately, absolutely and unconditionally liable for the full amount of the Debt.

## C.    The Fraud Full Recourse Event

85.    Pursuant to Section 2.6 of the Modification Agreement, Borrower "acknowledge[d], warrant[ed], represent[ed] and agree[d]" that as of the Modification Agreement's Execution Date and Effective Date, "[a]ll Rents are being regularly deposited into the Lockbox in accordance with the requirements of the Loan Agreement."

86.    In addition, pursuant to Section 2.5(d) of the Modification Agreement, Borrower "acknowledge[d], warrant[ed], represent[ed] and agree[d]" that the rent roll attached as Schedule 2.5(d) to the Modification Agreement (the "Modification Rent Roll") was "a true, complete and accurate summary of all Leases affecting the Property . . . as of the date of the [Modification Agreement] . . . ; there are no leasing broker's or finder's commissions of any kind due or to become due with respect to the Leases or the Property; the rents . . . under the Leases shown on the [Modification] Rent Roll are true and correct; [and] Borrower has not . . . given any concessions for free or reduced rent under the Leases and will not accept any prepaid rents for more than one month in advance."

18

87. The representations made by Borrower pursuant to Sections 2.5(d) and 2.6 of the Modification Agreement were false as of both the Effective Date and Execution Date of the Modification Agreement.

88. As alleged above, pursuant to the REZI Agreement, some or all of the Rents under the REZI Apartment leases—which account for 14 of the 31 residential units in the Property— were not being deposited into the Lockbox, because they were being collected and retained by REZI.

89. At the time Borrower executed the Modification Agreement, the stated rent for each of the REZI Apartments in the Modification Rent Roll was not true or accurate because it reflected the amount of the Monthly Payment REZI was obligated to pay Borrower under the REZI Agreement for each REZI Apartments, not the actual monthly rental payment due from the tenants under the REZI Apartment leases.

90. The REZI Agreement also contains Borrower's agreement to pay REZI "leasing broker's or finder's commissions" with respect to the REZI Apartments, in violation of Section 2.5(d) of the Loan Agreement.

91. Specifically, pursuant to the REZI Agreement, Borrower expressly agreed that REZI was its exclusive leasing agent with respect to the REZI Apartments and, in exchange for procuring leases for such units, REZI would be "entitled to retain an amount equal to the difference between the rent [it] collect[s] from the Tenants and the Monthly Payment [REZI owed Borrower] for the applicable [REZI] Apartment."

92. In addition, the leases for the REZI Apartments contain riders providing for three months or more of free rent.

19

93.     The REZI Agreement and multiple leases for REZI Apartments were executed by authorized signatories of the Borrower after the Borrower entered into the Loan Agreement but before the Execution Date of the Modification Agreement.

94.     Accordingly, at the time Borrower executed the Modification Agreement, it was aware that the representations it made in Sections 2.5(d) of the Modification Agreement were false.

95.     Pursuant to Section 4.9 of the Modification Agreement, Lender consented to allow Borrower to enter into a Management Agreement between Borrower and 55th Street Cavalry LLC (the "Manager"), dated as of January 11, 2021 (the "Management Agreement") pursuant to which the Manager was tasked with managing the Property.

96.     A true and correct copy of the Management Agreement is attached as Exhibit F to the Modification Agreement, which is attached hereto as Exhibit 9.

97.     Pursuant to Section 3.1 of the Management Agreement, Borrower "appoint[ed] Manager as its agent with exclusive right to manage the residential portion of the Property . . . and for renting and sales . . . ."

98.     Pursuant to Section 3.5 of the Management Agreement, "Manager shall collect all rents and other charges which may become due at any time from any tenant . . . [and] [a]ll monies so collected shall be deposited in the deposit account established by [Borrower] pursuant to the mortgage loan on the Property."

99.     Pursuant to Section 12.1 of the Management Agreement, Borrower agreed to pay the Manager a management fee in the amount of $10,000 to provide the services enumerated in the Management Agreement.

100. Borrower also executed and delivered to Lender a Conditional Assignment of Management Agreement, dated as of January 11, 2021 (the "Assignment of Management Agreement").

101. A true and correct copy of the Assignment of Management Agreement is attached as Exhibit G to the Modification Agreement, which is attached hereto as Exhibit 9.

102. Borrower represented in the Assignment of Management Agreement that, pursuant to the Management Agreement, "Borrower employed Manager exclusively to rent, lease, operate and manage the Property . . . ."

103. This representation was false as of the date of the Assignment of Management Agreement.

104. Pursuant to Section 3.1 of the REZI Agreement, Borrower "appoint[ed] [REZI] as its exclusive agent for rental of the [REZI] Apartments and grant[ed] [REZI] the exclusive right to market, solicit and procure prospective tenants to let the [REZI] Apartments." Borrower also "appoint[ed] [REZI] as the sole and exclusive collection agent with respect to the [REZI] Apartments and Leases."

105. Moreover, pursuant to Section 5.2 of the REZI Agreement, Borrower agreed that REZI "shall bill the Tenants for the rents and other charges . . . payable under their Leases and shall . . . collect and enforce the collection of all rents and other charges payable by the Tenants under their Leases."

106. Upon information and belief, based upon documents Borrower provided to Lender, including without limitation, rent rolls for the Property, Borrower permitted REZI to continue to collect rents pursuant to the REZI Agreement after Borrower entered into the Modification Agreement, Management Agreement, and Assignment of Management Agreement.

21

107. Lender justifiably relied on Borrower's agreements, representations, warranties and covenants in the Modification Agreement, Management Agreement, and Assignment of Management Agreement, among other documents, in agreeing to resolve the Borrower's Pre-Modification Defaults and modify Borrower's obligations under the Loan.

108. Pursuant to the Modification Agreement, and in reliance on Borrower's agreements, representations, warranties and covenants therein and in connection therewith, Lender agreed to waive a significant amount of default interest, late fees and other amounts that had accrued under the Loan as a result of Borrower's Pre-Modification Defaults. *See* Ex. 9 (Modification Agreement) § 4.10.

109. As described *supra* in paragraphs 85-108, Borrower intentionally misrepresented material facts regarding the financial condition and management of the Property in order to induce Lender to enter into the Modification Agreement and obtain the benefits thereunder, and Lender justifiably relied on Borrower's statements and was damaged thereby (the "Loan Modification Fraud").

110. The Loan Modification Fraud constitutes a Fraud Full Recourse Event, and renders each of the Guarantors, jointly and severally, immediately, absolutely, and unconditionally liable for the full amount of the Debt.

**D.** **The Misrepresentation Recourse Events**

111. As set forth *supra* in Section V(C), Borrower made intentional misrepresentations in connection with its execution and delivery of the Modification Agreement, Management Agreement, and Assignment of Management Agreement, among other Loan Documents.

112. The abovementioned intentional misrepresentations constitute Misrepresentation Recourse Events, and render each of the Guarantors, jointly and severally, immediately,

absolutely, and unconditionally liable for the Losses incurred by Lender arising out of or in connection with the same.

**E.     The Misappropriation Recourse Events**

113.     As set forth *supra* in Section V(A)-(C), pursuant to the REZI Agreement, Borrower sold, assigned and/or transferred to REZI its right to collect all Rents related to the REZI Apartments for a period of at least five years.

114.     Pursuant to Section 5.1.17(b) of the Loan Agreement, Borrower is prohibited from executing any "assignment of the lessor's interest in any of the Leases or the Rents."

115.     Moreover, pursuant to Sections 3.1(a) and 3.2 of the Loan Agreement, Borrower covenanted and agreed that all Rents shall be deposited in the Lockbox Account and that neither Borrower nor any other person or entity shall open or maintain any account, other than the accounts specifically designated in Article III of the Loan Agreement, into which Rents are deposited.

116.     Borrower's entry into the REZI Agreement, and allowing REZI's collection and retention of Rents, constitute Misappropriation Recourse Events, and renders each of the Guarantors, jointly and severally, immediately, absolutely, and unconditionally liable for the Losses incurred by Lender arising out of or in connection with the same.

**VI.     The Guarantors' Liability Under the Payment Guaranty**

117.     In connection with and to induce Lender to enter into the Modification Agreement, the Guarantors executed a Payment Guaranty dated as of January 11, 2021 in favor of Lender (the "Payment Guaranty").

118.     The Payment Guaranty is attached as Exhibit C to the Modification Agreement (but is omitted from the version of the Modification Agreement attached hereto as Exhibit 9). A true and correct copy of the Payment Guaranty is attached hereto as **Exhibit 14**.

119.    The Guarantors' obligations under the Payment Guaranty are separate and distinct from their obligations under the Recourse Guaranty. *See* Ex. 14 (Payment Guaranty) § 7.12.

120.    Pursuant to the Payment Guaranty, each of the Guarantors, among other things, irrevocably and unconditionally agreed, as primary obligor, to guarantee payment of the Borrower's obligation to pay the entire Loan debt following an Event of Default (the "Guaranteed Obligations"), up to the (i) the "Maximum Guaranteed Amount" (as defined in the Payment Guaranty), plus (ii) all interest, costs and expenses due and payable pursuant to Section 1.7 of the Payment Guaranty, which include reasonable out-of-pocket costs, expenses, and attorneys' fees incurred by Lender, together with interest thereon, as further specified in the Payment Guaranty. *Id.* § 1.1(b).

121.    "Maximum Guaranteed Amount" is defined in the Payment Guaranty as "the portion of the Debt equal to $11,000,000.00 as the same may be reduced in accordance with the terms and conditions of Article 6" of the Payment Guaranty. *Id.* § 1.1(c).

122.    Pursuant to Article 6 of the Payment Guaranty, beginning on February 7, 2021, and provided that no Event of Default exists, Lender has received a timely and factually accurate Financial Certification (as defined in the Payment Guaranty), and the Loan has not been accelerated, the Maximum Guaranteed Amount shall be reduced by $1 million on February 7th and August 7th of each calendar year. *Id.* § 6.1(a).[2]

123.    The misrepresentations described *supra* in Sections V(C)-(D) constitute Events of Default pursuant to Section 8.1(a)(v) of the Loan Agreement and Section 5.1(c) of the Modification Agreement (the "Misrepresentation Defaults").

---

[2]    Pursuant to Section 6.1(b) of the Payment Guaranty, the "Maximum Guaranteed Obligations" may also be reduced by "Approved Leasing Expense Credits" (as defined in the Payment Guaranty). No Approved Leasing Expense Credits exist.

124. The Modification Agreement, Management Agreement, and Assignment of Management Agreement were each executed on or about January 11, 2021 (the "Execution Date").

125. The Misrepresentation Defaults occurred as of the Execution Date.

126. Though Borrower committed the Misrepresentation Defaults before the Payment Defaults, Lender did not discover the Misrepresentation Defaults until after the Payment Defaults.

127. Under the Loan Documents, Borrower and Guarantors are not entitled to any notice or cure period with respect to the Misrepresentation Defaults.

128. Nevertheless, by letter dated January 10, 2023 (the "2023 Default Notice"), Lender sent notice to Borrower and Guarantors that, due to Borrower's Misrepresentation Defaults, Events of Default had occurred under the Loan Documents beginning no later than January 11, 2021.

129. A true and correct copy of the 2023 Default Notice is attached hereto as **Exhibit 15**.

130. Due to the Misrepresentation Defaults, Guarantors were not entitled to any reduction of the Maximum Guaranteed Amount pursuant to Article 6 of the Payment Guaranty.

131. Guarantors are liable for the full Maximum Guaranteed Amount of $11 million under the Payment Guaranty.

132. Alternatively, due to the Payment Defaults, Guarantors were not entitled to any reduction of the Maximum Guaranteed Amount under Article 6 of the Payment Guaranty after August 7, 2021, and Guarantors are liable for a Maximum Guaranteed Amount of *at least* $9 million.

133. Pursuant to Section 1.4 of the Payment Guaranty, "[i]f all or any part of the Guaranteed Obligations shall not be paid by Borrower when due, . . . Guarantor shall, within fifteen

(15) days after written demand by Lender . . . pay in lawful money of the United States of America, the amount due on the Guaranteed Obligation to Lender . . . ."

134.    Pursuant to Section 1.7 of the Payment Guaranty, "[i]n the event that Guarantor shall breach or fail to timely perform any provisions of this Guaranty, Guarantor shall, within ten (10) Business Days after written demand by Lender, pay Lender all out-of-pocket and reasonable costs and expenses (including court costs and reasonable attorneys' fees of outside counsel) actually incurred by Lender in the enforcement hereof or the preservation of Lender's rights hereunder, together with interest thereon at the Default Rate from the end of such ten (10) Business Day period until the date of payment to Lender."

135.    By letter dated December 27, 2021 (the "First Demand Letter"), Lender made written demand for the payment of all amounts due and owing under the Payment Guaranty, including the Maximum Guaranteed Amount plus all interest, costs, and expenses due and payable pursuant to Section 1.7 of the Payment Guaranty.

136.    A true and correct copy of the First Demand Letter is attached hereto as **Exhibit 16**.

137.    By letter dated September 7, 2022 (the "Second Demand Letter"), Lender reiterated its demand for the payment of all amounts due and owing under the Payment Guaranty, including the Maximum Guaranteed Amount plus all interest, costs, and expenses due and payable pursuant to Section 1.7 of the Payment Guaranty.

138.    A true and correct copy of the Second Demand Letter is attached hereto as **Exhibit 17**.

139.    By letter dated January 10, 2023 (the "Third Demand Letter"), Lender reiterated its demand for the payment of all amounts due and owing under the Payment Guaranty, including the

Maximum Guaranteed Amount plus all interest, costs, and expenses due and payable pursuant to Section 1.7 of the Payment Guaranty.

140.    A true and correct copy of the Third Demand Letter is attached hereto as **Exhibit 18**.

141.    The Guarantors have not paid the full amount due under the Payment Guaranty, each of whom remains in default thereunder.

142.    Guarantors' failure to pay the full amount due constitutes a breach of their obligations under the Payment Guaranty and other Loan Documents, and entitles Plaintiff to judgment in an amount to be determined at trial.

## FIRST CAUSE OF ACTION
### (Foreclosure of the Mortgage)

143.    Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

144.    Each of the Payment Defaults, among other defaults, constitutes an Event of Default under the Modification Agreement, Loan Agreement, Mortgage and other Loan Documents, which entitles Plaintiff to exercise its rights under the Loan Documents to foreclose upon the Mortgage.

145.    Pursuant to Section 5.2(a) of the Modification Agreement, "[u]pon the occurrence of an Event of Default after the Effective Date," Plaintiff may, "without further notice," "exercise any or all of Lender's rights and remedies under [the Modification] Agreement and the Loan Documents . . . including, but not limited to . . . commencing . . . foreclosure proceedings against Borrower, the Property and/or the other Collateral . . . ."

146.    Similarly, pursuant to Section 9.01(b) of the Mortgage, upon the occurrence of an Event of Default, Plaintiff may "institute proceedings, judicial or otherwise, for the complete

foreclosure of [the Mortgage] under any applicable provision of law in which case the Property or any interest therein may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner."

147.    The full amount of the Debt is currently due and payable.

148.    Borrower has failed to pay the full amount of the Debt.

149.    Pursuant to the Consent to Foreclosure, Borrower has consented to all of the relief sought against Borrower in this Complaint and waived all defenses in this action.

150.    Pursuant to the Consent to Foreclosure, Borrower has also acknowledged and agreed that the unpaid balance of Borrower's obligations under the Loan Documents, estimated as of July 1, 2022, totals *at least* $84,059,394, and includes (i) the unpaid principal amount of $73,000,000, (ii) accrued and unpaid interest at the rate of 3.00% per annum in the amount of $2,220,417, (iii) separate and additional default interest at the rate of 5.00% per annum in the amount of at least $2,737,806, (iv) deferred interest in the amount of $2,322,414, and (v) protective advances, defeasance amounts, and various fees, costs and expenses totaling $3,778,758, less certain funds held in suspense, reserve, or escrow accounts.

151.    Attorneys' fees and costs, due diligence report costs, title charges, and other amounts due and owing pursuant to the Loan Documents and applicable law continue to accrue. Interest accrues at the Note Rate (as defined in Section 4.1 of the Modification Agreement) of 4.30% per annum, and default interest accrues at the additional rate of 5.00% per annum, for a cumulative rate of 9.30% per annum. The amount of the Debt shall be recalculated at the appropriate stage of this case to reflect the total amount then due and owing under the Loan.

152.    In order to protect its security, Plaintiff may be compelled during the pendency of this action to pay charges affecting the Property. Such sums paid by Plaintiff, together with interest

thereon and any other amounts due under the Loan Documents as a result thereof, constitute part of the Debt due to Plaintiff under the Loan and Loan Documents, and, accordingly, Plaintiff requests that any such sums be added to the sums otherwise due under the Loan Documents.

153.    Each of the defendants herein has or claims to have some interest in, or lien upon the Property or some part thereof, which interest or lien, if any, is subject and subordinate to the lien of Plaintiff's Mortgage sought to be foreclosed in this action.

154.    No other action or proceeding has been commenced or maintained or is now pending at law or otherwise for the foreclosure of the Mortgage, or for recovery of the sum evidenced by the Note and secured by the Mortgage or any part thereof.

155.    Section 9-x of New York's Banking Law is not applicable to the parties or Loan at issue in this action.

156.    All conditions precedent necessary to bring forth the claims set forth herein have been satisfied.

157.    Plaintiff requests that in the event that this action proceeds to a judgment of foreclosure and sale, the Property be sold subject to the following:

   (a)    Any state of facts that an inspection of the Property would disclose;

   (b)    Any state of facts that an accurate survey of the Property would show;

   (c)    Covenants, restrictions, easements and public utility agreements of record, if any;

   (d)    Building and zoning ordinances or codes of the municipality, or any of its agencies or instrumentalities, in which the mortgaged Property is located and possible violations of such ordinances or codes;

   (e)    Any rights of tenants or persons in possession of the Property; except for tenants or occupants affiliated with Borrower or any of the Guarantors;

   (f)    Any equity of redemption of the United States of America to redeem the premises within 120 days from the date of sale; and

(g)     Prior lien(s) of record, if any.

158.    In the event Plaintiff possesses any other lien(s) against the Property either by way

of judgment, junior mortgage or otherwise, Plaintiff requests that such other lien(s) shall not be

merged in Plaintiff's causes of action set forth in this Complaint, but that Plaintiff shall be

permitted to enforce the other lien(s) and/or seek determination of priority thereof in any

independent action(s) or proceeding(s), including, without limitation, any surplus money

proceedings.

159.    Plaintiff shall not be deemed to have waived, altered, released or changed the

election made herein to accelerate and declare immediately due and payable the entire unpaid

balance of principal by reason of any payment received after the commencement of this action,

and such election shall continue and remain effective.

160.    Pursuant to Section 6.06 of the Mortgage, Borrower is obligated to pay to Lender

on demand, which is hereby made, "any and all expenses, including legal expenses and attorneys'

fees, incurred or paid by Lender in . . . enforcing its rights hereunder with respect to the Property,"

including with respect to this action, together with interest thereon at the Default Rate (as defined

in the Loan Agreement).

### SECOND CAUSE OF ACTION
### (Judgment on the Recourse Guaranty
### Against the Guarantors, Jointly and Severally, for Full Recourse)

161.    Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs

as if fully set forth herein.

162.    The Recourse Guaranty is a valid guaranty agreement executed by and enforceable

against each of the Guarantors in their personal capacity.

163.    Plaintiff is the owner and holder of the Recourse Guaranty and is entitled to all of

the rights and remedies set forth therein.

164.    Pursuant to the Recourse Guaranty, each Guarantor is "absolutely and unconditionally" liable, in their personal capacity, for the prompt and full repayment of the Debt upon the occurrence of any of the full recourse events specified in Section 9.4(c) of the Loan Agreement.

165.    As alleged above, several full recourse events occurred in connection with the Loan as a result of the Impermissible REZI Transfer, the REZI Cash Management Defaults, and the Loan Modification Fraud.

166.    Accordingly, each Guarantor, jointly and severally, is personally liable for the full amount of the Debt.

167.    Under the Recourse Guaranty, the Guarantors are also personally and independently liable for "all expenses (including counsel fees and disbursements) incurred by Lender in connection with the collection of the Guaranteed Recourse Obligations of Borrower or any portion thereof or with the enforcement of th[e] [Recourse] Guaranty."

168.    The amounts owing under the Recourse Guaranty remain unpaid.

169.    The Guarantors have failed to perform under the Recourse Guaranty.

### THIRD CAUSE OF ACTION
**(Judgment on the Recourse Guaranty**
**Against the Guarantors, Jointly and Severally, for Losses**
**Incurred Due to Borrower's Intentional Misrepresentations)**

170.    Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

171.    The Recourse Guaranty is a valid guaranty agreement executed by and enforceable against each of the Guarantors in their personal capacity.

172.    Plaintiff is the owner and holder of the Recourse Guaranty and is entitled to all of the rights and remedies set forth therein.

173.     Pursuant to the Recourse Guaranty, each Guarantor is "absolutely and unconditionally" liable, in their personal capacity, for any and all Losses incurred by Plaintiff arising out of or in connection with Borrower's intentional misrepresentations in connection with its execution and delivery of the Modification Agreement, Management Agreement, and Assignment of Management Agreement, among other Loan Documents.

174.     As set forth *supra* in Section V(C), Borrower made intentional misrepresentations in connection with its execution and delivery of the Modification Agreement, Management Agreement, and Assignment of Management Agreement, among other Loan Documents, including, without limitation, by failing to disclose the existence of the REZI Agreement and (i) falsely representing that all Rents are being regularly deposited into the Lockbox in accordance with the requirements of the Loan Agreement, (ii) falsely representing that there are no leasing broker's or finder's commissions of any kind due or to become due with respect to the Leases or the Property, (iii) falsely representing that Borrower had not given any concessions for free or reduced rent under the Leases, (iv) falsely representing that the Manager was exclusively responsible for collecting all Rents and operating and managing the Property, and (v) providing Plaintiff with the Modification Rent Roll, which materially misstates the amount of rent collected under the Leases for the REZI Apartments.

175.     As a result of any of the abovementioned intentional misrepresentations, each of the Guarantors, jointly and severally, is absolutely and unconditionally liable for the Losses incurred by Plaintiff arising out of or in connection with such misrepresentations.

176.     Under the Recourse Guaranty, Guarantors are also personally and independently liable for "all expenses (including counsel fees and disbursements) incurred by Lender in

connection with the collection of the Guaranteed Recourse Obligations of Borrower or any portion

thereof or with the enforcement of th[e] [Recourse] Guaranty."

177.    The amounts owing under the Recourse Guaranty remain unpaid.

178.    The Guarantors have failed to perform under the Recourse Guaranty.

179.    Plaintiff has suffered and will continue to suffer damages due to Losses for which

Guarantors are personally liable, in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
**(Judgment on the Recourse Guaranty**
**Against the Guarantors, Jointly and Severally, for Losses**
**Incurred Due to Borrower's Misapplication or Misappropriation of Rents)**

180.    Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs

as if fully set forth herein.

181.    The Recourse Guaranty is a valid guaranty agreement executed by and enforceable

against each of the Guarantors in their personal capacity.

182.    Plaintiff is the owner and holder of the Recourse Guaranty and is entitled to all of

the rights and remedies set forth therein.

183.    Pursuant to the Recourse Guaranty, each Guarantor is "absolutely and

unconditionally" liable, in their personal capacity, for any and all Losses incurred by Plaintiff

arising out of or in connection with Borrower's misapplication or misappropriation of the Rents.

184.    As set forth *supra* in Section V(A)-(C), pursuant to the REZI Agreement, Borrower

sold, assigned and/or transferred to REZI its right to collect and retain Rents related to the REZI

Apartments for a period of at least five years.

185.    Pursuant to Section 5.1.17(b) of the Loan Agreement, Borrower is prohibited from

executing any "assignment of the lessor's interest in any of the Leases or the Rents."

186. Moreover, pursuant to Sections 3.1(a) and 3.2 of the Loan Agreement, Borrower covenanted and agreed that all Rents shall be deposited in the Lockbox Account and that neither Borrower nor any other person or entity shall open or maintain any account, other than the accounts specifically designated in Article III of the Loan Agreement, into which Rents are deposited.

187. As a result of Borrower's execution of the REZI Agreement and REZI's collection and retention of Rents pursuant to the REZI Agreement, each of the Guarantors, jointly and severally, is absolutely and unconditionally liable for the Losses incurred by Plaintiff arising out of or in connection with the same.

188. Under the Recourse Guaranty, Guarantors are also personally and independently liable for "all expenses (including counsel fees and disbursements) incurred by Lender in connection with the collection of the Guaranteed Recourse Obligations of Borrower or any portion thereof or with the enforcement of th[e] [Recourse] Guaranty."

189. The amounts owing under the Recourse Guaranty remain unpaid.

190. The Guarantors have failed to perform under the Recourse Guaranty.

191. Plaintiff has suffered and will continue to suffer damages due to Losses for which Guarantors are personally liable, in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (Judgment on the Payment Guaranty
### Against the Guarantors, Jointly and Severally)

192. Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

193. The Payment Guaranty is a valid guaranty agreement executed by and enforceable against each of the Guarantors in their personal capacity.

194. Plaintiff is the owner and holder of the Payment Guaranty and is entitled to all of the rights and remedies set forth therein.

195.     Pursuant to the Payment Guaranty, each of the Guarantors, among other things, irrevocably and unconditionally agreed, as primary obligor, to guarantee payment of the Guaranteed Obligations, *i.e.*, the Loan Debt up to the Maximum Guaranteed Amount plus all interest, costs and expenses due and payable pursuant to Section 1.7 of the Payment Guaranty, following an Event of Default under the Loan Documents.

196.     Pursuant to Section 1.4 of the Payment Guaranty, "Guarantor shall, within fifteen (15) days after written demand by Lender . . . pay in lawful money of the United States of America, the amount due on the Guaranteed Obligation to Lender . . . ."

197.     Due to the Borrower's Misrepresentation Defaults, each Guarantor is liable under the Payment Guaranty, jointly and severally, for the Maximum Guaranteed Amount of $11 million, plus all interest, costs, and expenses due and payable pursuant to Section 1.7 of the Payment Guaranty.

198.     Alternatively, due to the Borrower's Payment Defaults, each Guarantor is liable under the Payment Guaranty, jointly and severally, for the Maximum Guaranteed Amount of *at least* $9 million, plus all interest, costs, and expenses due and payable pursuant to Section 1.7 of the Payment Guaranty.

199.     Pursuant to the First Demand Letter, Second Demand Letter, and Third Demand Letter, Plaintiff made written demand for the payment of all amounts due and owing under the Payment Guaranty, including the Maximum Guaranteed Amount plus all interest, costs, and expenses due and payable pursuant to Section 1.7 of the Payment Guaranty.

200.     The amount owing under the Payment Guaranty has not been paid in full.

201.     The Guarantors have failed to perform under the Payment Guaranty.

WHEREFORE, plaintiff respectfully requests:

(a)     that the defendants and all persons claiming under them, subsequent to the commencement of this action, be barred and foreclosed of and from all estate, right, title, interest, claim, lien, and equity of redemption of, in and to the Property, and each and every part and parcel thereof, including any personal property appurtenant thereto, and any and all leases, licenses, and/or occupancy agreements of any kind or nature in or to the Property or any portion thereof; that the Property may be decreed to be sold, according to law, in "as is" physical order and condition, subject to the items set forth in paragraph 157 of this Complaint; that the monies arising from the sale thereof may be brought into Court; that Plaintiff may be paid the amount due on the Note, Mortgage, and other Loan Documents, with interest, default interest, late charges, exit fees, and the expenses of such sale, including attorneys' fees, together with the costs, allowances, and disbursements of this action, and together with any sums incurred by Plaintiff pursuant to any term or provision of the Note, Mortgage, and other Loan Documents set forth in this Complaint or to protect the lien of the Mortgage, together with interest and default interest upon those sums accruing from the dates of the respective payments and advances, so far as the amount of such monies properly applicable thereto will pay the same; that the Borrower may be adjudged to pay the whole residue, or so much thereof as permitted under the Loan Documents or the Court determines to be just and equitable, of the debt remaining unsatisfied after the sale and the

application of the proceeds pursuant to the directions contained in such judgment; that the referee (or other officer) making such sale be directed to pay from the proceeds thereof all charges which are liens on the property sold; that in the event Plaintiff possesses any other lien(s) against the Property either by way of judgment, junior mortgage or otherwise, Plaintiff requests that such other lien(s) shall not be merged in Plaintiff's cause(s) of action set forth in this Complaint but that Plaintiff shall be permitted to enforce the other lien(s) and/or seek determination of priority thereof in any independent action(s) or proceeding(s), including, without limitation, any surplus money proceedings; and that Plaintiff may have such other and further relief as may be just and equitable;

(b)     that, upon application therefor, this Court forthwith appoint a receiver in accordance with the provisions of the Mortgage;

(c)     in accordance with Real Property Actions and Proceedings Law § 1371, Guarantors be adjudged to pay the whole residue or so much thereof as permitted under the Recourse Guaranty and other Loan Documents, if any, or the Court determines to be just and equitable, of the Debt remaining unsatisfied and deficient after a foreclosure sale of the Property and the application of the proceeds pursuant to the directions contained in such judgment;

(d)     judgment in Plaintiff's favor and against Guarantors, jointly and severally, under the Payment Guaranty in the amount of the Maximum Guaranteed Amount, plus attorneys' fees, costs, and expenses incurred by Plaintiff in

enforcing its rights under the Payment Guaranty, and pre- and post-judgment interest at the applicable rate(s) until paid in full;

(e)    judgment in Plaintiff's favor and against Guarantors, jointly and severally, under the Recourse Guaranty, in the amount of the Debt remaining unsatisfied after the sale of the Property and the application of the proceeds, plus attorneys' fees, costs, and expenses incurred by Plaintiff in enforcing its rights under the Recourse Guaranty, and pre- and post-judgment interest at the applicable rate(s) until paid in full;

(f)    judgment in Plaintiff's favor and against Guarantors, jointly and severally, under the Recourse Guaranty, in the amount of Losses incurred by Plaintiff in connection with the Misrepresentation Recourse Event and the Misappropriation Recourse Event, plus attorneys' fees, costs, and expenses incurred by Plaintiff in enforcing its rights under the Recourse Guaranty, and pre- and post-judgment interest at the applicable rate(s) until paid in full;

(g)    Plaintiff's costs, expenses, fees, and disbursements of this action, including attorneys' fees, costs, and expenses; and

(h)    such other and further relief as the Court may deem just and proper.

[*remainder of page intentionally left blank; signature block on following page*]

38

Dated: New York, New York
      January 20, 2023

Respectfully submitted,

**VENABLE LLP**

By:_____*/s/ Rishi Kapoor*_____
Rishi Kapoor
Arie Peled
Rockefeller Center
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
Tel.: (212) 307-5500
Fax: (212) 307-5598
rkapoor@venable.com
apeled@venable.com

*Counsel for Plaintiff*